■ BANK LEUMI TRUST COMPANY OF NEW YORK, Appellant, v D'EVORI INTERNATIONAL, INC., et al., Respondents.—Order, Supreme Court, New York County (Myriam J. Altman, J.), entered August 18, 1989, which granted defendants' motion to the extent of granting defendants Dvori Silverberg and Soli Shaltiel leave to assert all the affirmative defenses in the proposed amended answer, granting defendants Steven Silverberg and the Silverberg-related entities leave to assert the second, third and fifth affirmative defenses and counterclaim for fraud in the proposed amended answer and granting defendant D'Evori International, Inc. leave to assert the second, third and fifth affirmative defenses and the first and third counterclaims in the proposed amended answer, unanimously reversed, on the law, with costs and disbursements, and the motion denied in its entirety.

This appeal involves three separate actions, now consolidated, brought by Bank Leumi. The first, against D'Evori International, Inc., a New York corporation which, until July 1987, was engaged in the business of importing and selling women's undergarments, sought to recover over $2,000,000 due on certain loan agreements and to enforce the bank's security interest in certain of D'Evori's property. The second action was brought against Dvori Silverberg and Soli Shaltiel, officers of D'Evori, to recover over $2,000,000 based on their personal unlimited guarantees of the debts and obligations of D'Evori to Bank Leumi and also to enforce a security interest in Dvori Silverberg's cooperative apartment. In the third action, the bank sought to recover $1,000,000 from Steven Silverberg, Dvori Silverberg's former husband, on his personal limited guarantees of D'Evori's debts and obligations to the bank and other related agreements and to enforce certain assignments and security interests executed in favor of the bank by said defendant. In their responsive pleadings, the defendants alleged various affirmative defenses and counterclaims, as to which Bank Leumi moved for summary judgment dismissing all 28 affirmative defenses and 14 counterclaims and for judgment on all its causes of action against all defendants. The IAS court dismissed all 14 counterclaims and 25 of the affirmative defenses. Judgment was denied to the

bank, however, on the ground that the three remaining affirmative defenses—economic duress, failure of consideration and unclean hands—raised triable issues of fact precluding a summary disposition. The defendants subsequently moved for leave to serve an amended answer to replead certain of their dismissed affirmative defenses and counterclaims. The court granted the motion, holding, in an order which is the subject of this appeal, that the defendants' proposed affirmative defenses and counterclaim alleging economic duress, breach of contract, failure of consideration, fraudulent misrepresentation and fraudulent inducement were legally sufficient and properly pleaded.

In 1984 D'Evori, in connection with earlier transactions with Bank Leumi, executed and delivered to the bank security agreements whereby, *inter alia,* it pledged, as security for all its liabilities to the bank, all its personal property, including, without limitation, all of its inventory, accounts, chattel paper, books and records. Subsequently, in June 1986, D'Evori assigned to the bank all of its rights to receive any and all sums due it from Milberg Factors, Inc., which factored its accounts receivable. Thereafter, on August 7, 1986, D'Evori entered into a written loan agreement with Bank Leumi, pursuant to which the bank agreed, *inter alia,* to make loans and advances to D'Evori, up to 80% of the value of the accounts receivable, against the assignment of said accounts and the pledge of its inventory and other collateral. It was agreed that the making of any advance and the amount thereof were solely within the bank's discretion and that the bank could change the loan percentage from time to time, effective immediately, upon the giving of notice either orally or in writing. The loan agreement further provided that if D'Evori became insolvent, discontinued its business or failed to pay its debts, or if it defaulted under any agreement or instrument executed in connection with the loan agreement all its liabilities would become immediately due and payable.

On December 12, 1986, D'Evori executed and delivered to the bank a $900,000 promissory note payable in 20 installments of principal beginning March 12, 1987. On December 16, 1986, the bank, at D'Evori's request, issued a $300,000 irrevocable letter of credit in favor of D'Evori's Italian manufacturer. Subsequent to entering into the loan agreement, execution of the installment notice and issuance of the letter of credit, the bank, from time to time, made various loans and advances to D'Evori. By March 12, 1987, D'Evori was in default on its obligations under the terms of the loan agree-

ment and installment note, by virtue of which all of its liabilities and obligations to the bank became immediately due and payable.

In order to secure her unlimited guarantee of D'Evori's debts and obligations, Dvori Silverberg executed and delivered a security agreement, dated September 10, 1986, granting the bank a security interest in all of the personal property and fixtures (other than household furniture and furnishings) at her 239 East 79 Street cooperative apartment together with the cooperative stock certificates and proprietary lease. Soli Shaltiel's unlimited guarantee was executed on May 10, 1986. Steven Silverberg executed a limited guarantee in the sum of $600,000 on February 6, 1986 and, on May 30, 1986, a second substantially identical limited guarantee in the sum of $300,000. He also executed, on December 12, 1986, a third limited guarantee in the amount of $100,000, which was expressly warranted to be in addition to, and not a substitution for, the earlier guarantees. Concurrently with his execution of the $100,000 guarantee, Steven Silverberg executed, as security for the $600,000 and $300,000 guarantees, an assignment transferring to the bank the first $900,000 of proceeds due him from the sale of a certain leasehold interest owned by defendant Tudor Hotel Corp., of which he was a 50% stockholder. In addition, he assigned to the bank his one-third partnership share in defendant Silverberg, Zarucki and Bombart Company.

It is well established that leave to amend should not be granted where the proposed amendment is palpably insufficient as a matter of law. (See, Sharapata v Town of Islip, 82 AD2d 350, 362, affd 56 NY2d 332; East Asiatic Co. v Corash, 34 AD2d 432.) Since we find that the affirmative defenses and counterclaims in the defendants' proposed answer are both legally insufficient and not properly pleaded with the requisite particularity, we reverse and deny the motion for leave to amend.

In the proposed amended answer D'Evori asserts five affirmative defenses and three counterclaims seeking to recover over $60,000,000 in damages from Bank Leumi. It asserts breach of contract as both an affirmative defense (third) and counterclaim (first),* alleging that D'Evori reached an agree-

---

* D'Evori alleges a total or partial failure of consideration as a second affirmative defense. Since the IAS court, in its previous determination, did not dismiss this affirmative defense on the bank's motion for summary judgment, the bank did not challenge the inclusion of the defense in the motion to amend. Nor does it raise any issue with respect thereto on appeal.

ment with the bank to extend its existing line of credit by an additional $500,000 to $2.4 million. According to D'Evori, the bank "also agreed to transfer $900,000.00 of [its] debt to Mr. Silverberg" and to accept payment of $150,000 thereby reducing D'Evori's debt and increasing the amount available under the $2.4 million line of credit. Between October and November 1986, Steven Silverberg and the bank negotiated as to the type of collateral that would be acceptable to the bank. At their meeting on December 12, 1986, Mr. Silverberg, not represented by counsel, executed the instrument assigning his collateral to the bank. At that same meeting, D'Evori executed the $900,000 note in reliance on the bank's alleged representation that a $500,000 letter of credit would be immediately opened in favor of its Italian manufacturer. According to D'Evori, the bank's attorney confirmed, "you have your letter of credit." The following Monday, however, the bank refused to honor D'Evori's checks and the $500,000 letter of credit was never opened. Instead, notwithstanding that D'Evori had already ordered merchandise from its Italian manufacturer in reliance on the earlier representations, the bank informed D'Evori that it would open only a $300,000 letter of credit. Thus, D'Evori asserts, on information and belief, that the bank never intended to transfer D'Evori's debt to Mr. Silverberg or to open the $500,000 letter of credit. These misrepresentations, it asserts, were made "to trick D'Evori into paying $150,000 and Mr. Silverberg into collateralizing his guarantee to strengthen the [b]ank's position as lender."

These allegations also constitute the basis of D'Evori's fifth affirmative defense and third counterclaim of economic duress. The bank's alleged threat of terminating its credit line, D'Evori claims, left it with no choice but to agree to a reduction in the letter of credit to $300,000. While the allegations in a pleading must be taken as true and viewed in a light most favorable to the pleader, the loan agreement, note and other instruments executed by the defendants and submitted in support of the motion to amend "establish the rights of the parties and prevail over conclusory allegations of the complaint". *(805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d 447, 451.) Absent any ambiguity therein—and none is suggested—interpretation of these instruments poses only a question of law to be decided by the court. Given the clear and unambiguous terms of the loan agreement, D'Evori's claims of economic duress and breach of contract fail, as a matter of law. Paragraph 1 unequivocally states that "the making of any advance and the amount thereof shall be solely in [the

bank's] discretion". Even assuming an oral contract as alleged by D'Evori, it is a matter of record that the bank increased its line of credit from $1.9 million to $2.4 million. D'Evori's assertion that its debt was not reduced by $1,050,000, as allegedly agreed, is belied by the fact that although the bank received $150,000 from Dvori Silverberg and reduced D'Evori's debt accordingly, Steven Silverberg admittedly never executed any documents assuming direct and primary responsibility for $900,000 of D'Evori's obligations to the bank. Thus, any cause of action based on the bank's alleged failure to reduce D'Evori's debts by $1,050,000 is legally insufficient since D'Evori cannot establish the bank's nonperformance of this term of the alleged oral contract or the performance by Steven Silverberg of his obligations thereunder. Moreover, none of the documents executed by any of the defendants modified or terminated the loan agreement governing the bank's lending relationship with D'Evori. Since the loan agreement cannot be modified or terminated except in writing, the alleged oral agreement to open a $500,000 letter of credit in favor of D'Evori constitutes an unenforceable oral modification of the agreement. *(See,* General Obligations Law § 15-301.) To the extent D'Evori seeks to establish that the loan agreement is not as it purports to be, it is barred as a matter of law and public policy. *(See, Marine Midland Bank v Haufler Assocs.,* 55 AD2d 803, 804; *First Natl. City Bank v Cooper,* 50 AD2d 518.)

D'Evori's claim of economic duress is insufficient for the same reason. The theory of economic duress "permits a complaining party to void a contract and recover damages when it establishes that it was compelled to agree to the contract terms because of a wrongful threat by the other party which precluded the exercise of its free will". *(805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d, *supra,* at 451.) The terms of the loan agreement gave the bank complete discretion as to whether to extend credit at all to D'Evori and to determine the extent of any such credit. That the bank's refusal to extend further credit may have come at an inconvenient time does not transform the exercise of a legal right into a wrongful threat. Additionally, we note that D'Evori delayed over six months before asserting economic duress as a defense. Yet, it admittedly received the benefits of the bank's extension of a $300,000 letter of credit opened on December 16, 1986 by ordering goods thereunder. A party "who would repudiate a contract procured by duress, must act promptly, or he will be deemed to have elected to affirm it." *(Bethlehem Steel Corp. v Solow,* 63 AD2d 611, 612; *see, Edison Stone Corp. v 42nd St.*

*Dev. Corp.,* 145 AD2d 249, 253.) Finally, we do not believe that the doctrine of economic duress which is traditionally used as a defense to an action, has any place in a cause of action seeking money damages.

Dvori Silverberg contends that the bank forced her to execute her personal guarantee "long after it had already extended credit to D'Evori", which guarantee it then backdated without her knowledge or approval. She also claim that she was induced to execute the security agreement with respect to her cooperative apartment by the bank's fraudulent representation that it would not perfect its security interest and that the agreement would be returned to her when the bank received $170,000 from D'Evori's factor. Although the factor paid the bank, the security agreement was never returned. Both Ms. Silverberg and Mr. Shaltiel, who also, as noted, executed a personal guarantee, were granted leave to assert economic duress and fraudulent misrepresentation as affirmative defenses. These defendants fail completely to specify the bank's wrongful threats that allegedly precluded the exercise of their free will or even to allege that the bank was not within its rights to request their unlimited guarantees or to refuse further credit if such guarantees were not provided. Since the bank had no obligation to make advances to D'Evori except in its discretion, any statements on the bank's part that it would not continue to extend credit to D'Evori unless it obtained the unlimited guarantees of Dvori Silverberg and Soli Shaltiel as additional collateral, even if proved, do not constitute the "wrongful threat" that would support a defense of economic duress. Furthermore, both Ms. Silverberg and Mr. Shaltiel failed to repudiate their guarantees promptly and, therefore, have waived any claim of economic duress, Moreover, as established by the documents and admitted by the defendants, the bank extended credit, which was accepted and utilized by D'Evori, subsequent to the execution of these guarantees. Thus, Ms. Silverberg and Mr. Shaltiel accepted the benefits of the bank's performance in reliance upon their guarantees and thereby ratified the same.

With respect to Ms. Silverberg's and Mr. Shaltiel's second affirmative defense of fraud related to the execution of their guarantees and the Silverberg security agreement, they must, to prevail, prove all five of the traditional elements of fraud: representation of a material fact, the falsity of such representation, scienter, reliance and damages. *(See, Channel Master Corp. v Aluminium Ltd. Sales,* 4 NY2d 403, 406-407.) Furthermore, any cause of action or defense based upon, *inter alia,*

misrepresentation or fraud must state in detail "the circumstances constituting the wrong". (CPLR 3016 [b].) Conclusory allegations or mere suspicion of fraud are wholly insufficient. *(Glassman v Catli,* 111 AD2d 744.) A reading of the proposed answer and supporting papers reveals that defendants Dvori Silverberg and Shaltiel premise their fraud claim not on a clear recitation of the facts constituting the fraud, but rather on vague and conclusory allegations. They have failed completely to plead any of the elements of fraud with the necessary specificity. Nowhere is the nature of the alleged misrepresentation or any of its details stated. Such failure renders their proposed affirmative defense hopelessly defective. Moreover, reliance is an essential element of such a claim or defense, and given the unambiguous terms of the loan agreement, which leaves to the bank's sole discretion the decision whether to advance funds, any such reliance would not be justified. The proposed answer's allegations to the effect that the bank required the individual defendants to provide additional collateral before additional credit would be made available is entirely consistent with the loan agreement. Although it is claimed that a $500,000 letter of credit was promised by the bank, no written evidence of such a commitment has been provided. The loan agreement expressly precludes reliance on any oral agreement to modify its terms. A $300,000 letter of credit was opened and the bank paid over $72,000 upon receipt of the required documents. The bank's December 10, 1986 interoffice memorandum also supports its claim that the amount of the letter of credit is "predicated upon sufficient availability under the approved formulas" and that Shaltiel was "told that there was availability to open" a $300,000 letter of credit only.

The proposed third affirmative defense of defendants Dvori Silverberg and Shaltiel alleging partial or total failure of consideration is based on the claim that the bank failed to return Dvori Silverberg's security agreement. This alleged partial or total failure of consideration, it is alleged, bars recovery on said defendants' unlimited guarantees. The Silverberg security agreement and the unlimited guarantees, however, are separate documents supported by independent consideration. Therefore, a defense to the enforcement of the security agreement is not a defense to enforcement of the unlimited guarantees. Thus, this affirmative defense should not have been allowed. In any event, Dvori Silverberg does not plead failure of consideration with respect to the security agreement (although denominated as such) but rather breach

of contract. She does not deny that D'Evori received consideration from the bank in exchange for her security agreement.

The IAS court allowed Steven Silverberg to assert as a third affirmative defense fraudulent misrepresentation with respect to his execution of the $600,000 and $300,000 limited guarantees and the bank's promise to return the $300,000 guarantee. As in the case of the other individual defendants, Steven Silverberg fails to plead any of the elements of fraud with the requisite particularity, thereby rendering fatally defective his proposed affirmative defense. His May 29, 1986 letter in which he states that the bank would release his $300,000 guarantee upon its collection of $300,000 from D'Evori was never countersigned or acknowledged in writing. The $300,000 guarantee contains no language that Steven Silverberg's obligations thereunder were to be discharged upon payment of $300,000 to the bank by D'Evori. "Absent fraud or mutual mistake, where the parties have reduced their agreement to a writing, the parol evidence rule will exclude evidence of any prior or contemporaneous negotiations between them which is offered to modify or contradict the terms of the writing" (Chemical Bank v Kaufman, 142 AD2d 526, citing Marine Midland Bank v Thurlow, 53 NY2d 381, 387). Thus, evidence of any prior or contemporaneous oral modification of the guarantee is barred. His claim is, in any event, further belied by the express language of his subsequent $100,000 guarantee which provided that it would "not terminate, supercede, cancel, diminish or modify any prior guaranty or guaranties given by [Steven Silverberg] to the [b]ank with respect to liabilities of [D'Evori]" and that it was "in addition to and not in substitution for those [guarantees] which remain in full force and effect".

The proposed fifth affirmative defense, based on the bank's alleged fraud in inducing Steven Silverberg into collateralizing his $600,000 and $300,000 guarantees and executing an additional $100,000 guarantee, alleges that he relied upon the bank's "statements and representations that it would transfer $900,000.00 of D'Evori's debt to [him] and open a letter of credit for $500,000.00". A party, however, cannot be defrauded into doing that which it was already legally obligated to do. (See, New York State Urban Dev. Corp. v Garvey Brownstone Houses, 98 AD2d 767, 771.) Both the $600,000 and $300,000 limited guarantees specifically provide that the bank had the right to require Silverberg to deliver additional collateral satisfactory to the bank as security for the indebtedness guaranteed. The IAS court, in an effort to avoid this control-

ling principle, noted Silverberg's allegation that the collateralization of his guarantees was part of a "new transaction". As previously noted, however, the loan agreement, the document pursuant to which D'Evori borrowed and continued to borrow from the bank, was never modified or terminated. In fact, as defendants allege, the purpose of the December 12, 1986 transaction was to increase and restructure D'Evori's line of credit; its existing borrowing relationship with the bank was, however, never terminated, nor was a new relationship created. Since Steven Silverberg had an absolute and unqualified obligation to furnish collateral acceptable to the bank at its request, any alleged reliance on any representations is irrelevant. His obligation to provide collateral arose independently of any alleged representations.

With respect to the allegation of fraud in inducing the $100,000 guarantee, suffice it to say that fraud in the inducement is not a defense "when the guarantee recites that it is absolute and unconditional irrespective of any lack of validity or enforceability of the guarantee, or any other circumstance which might otherwise constitute a defense available to a guarantor in respect of the guarantee, those recitals being inconsistent with the guarantors' claim of reliance upon an oral representation that the lending banks were committed to extend to the corporation an additional line of credit." *(Citibank v Plapinger,* 66 NY2d 90, 92, *rearg denied* 67 NY2d 647.) Here, all of Steven Silverberg's guarantees state that he "irrevocably and unconditionally" guarantees payment to the bank and that "[n]o invalidity, irregularity or unenforceability of all or any part of the liabilities hereby guaranteed or of any security therefor shall affect, impair or be a defense to this guaranty, and this guaranty is a primary obligation of the undersigned." Under such circumstances, Mr. Silverberg is foreclosed from asserting reliance upon any alleged bank representation, for to permit him to do so would condone his own fraud in misrepresenting his intent in signing his guarantees.

Finally, Steven Silverberg's sole counterclaim seeking $15,000,000 in damages based on false and fraudulent representations is also insufficient as a matter of law for failure to allege the fraud with the requisite particularity. Silverberg claims that he has been damaged in that the bank's actions forced D'Evori out of business, thereby causing him to lose the value of his interest in D'Evori's business and good will and the shares of outstanding stock he would have received pursuant to an option agreement. It is well settled that a share-

holder, even though he loses the value of his investment, does not have an individual cause of action for a wrong committed against a corporation. *(Abrams v Donati,* 66 NY2d 951, 953, *rearg denied* 67 NY2d 758.) Concur—Sullivan, J. P., Carro, Rosenberger and Smith, JJ.