**WOODWARD & DICKERSON, A DIVISION OF CONAGRA, INC., a Delaware corporation, Plaintiff,**

v.

**Gerhard KAHN, Regina Kahn, Kahn Lumber and Mill Work Co., Polaris Properties and GNK Enterprises, Defendants.**

**No. 89 Civ. 6733 (PKL).**

United States District Court, S.D. New York.

June 24, 1991.

McGrath, North, Mullin & Kratz, P.C., Pine Island, N.Y. (Donald da Parma, of counsel), for plaintiff.

Brennan & Daubner, P.C., Laurelton, N.Y. (Thomas P. Daubner, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge.

This is an action to recover under a guaranty executed by defendants in favor of plaintiffs and others. The principal obligor on the underlying loan having defaulted on its obligation, plaintiff now moves the Court for summary judgment compelling

the performance of the guarantor's obligations under the guaranty.

## BACKGROUND

The principal facts in this matter are not disputed. This action arises out of events surrounding a project to construct a gypsum wallboard plant in Port Newark, New Jersey. The owner and operator of the plant was to be Atlantic Gypsum Company ("AGC"), a corporation of which defendant Gerhard Kahn ("Kahn") was the promoter and principal shareholder. Kahn is also the primary owner of defendants Kahn Lumber and Mill Work, Inc., Polaris Properties and GNK Enterprises, and is the husband of defendant Regina Kahn.

A consortium of banks provided the main financing for the project, and plaintiff Woodward & Dickerson ("Woodward"),[1] along with two other entities,[2] provided additional financing pursuant to subordinated loan agreements. By a loan agreement executed on or about December 30, 1986 (the "Loan Agreement"), Woodward agreed to loan AGC up to $650,000 to refinance construction costs and to finance capitalized interest costs. On or about December 31, 1986, AGC executed a subordinated promissory note in favor of Woodward. As security for payment of the Loan Agreement and promissory note, defendants executed a subordinated guaranty agreement (the "Guaranty") in favor of Woodward and the other entities providing subordinated loans.

Under paragraph 3(c) of the Loan Agreement, Woodward was required to, and did, furnish a letter of credit in the aggregate amount of $650,000 for the benefit of parties providing interim financing to AGC. On September 2, 1988, $588,673.70 was drawn down against the letter of credit by United Jersey Bank, AGC's designated beneficiary.

Paragraph 4 of the Loan Agreement specified the timing and amount of interest

1. At the time the guaranty that is the subject of this action was entered into, Woodward was a Pennsylvania corporation and a wholly owned subsidiary of ConAgra, Inc., a Delaware corporation. Woodward was merged into ConAgra, Inc., on January 28, 1987, and now has the status of a division of that corporation.

2. Flakt, Inc., and A/S Bulkhandling, which are not parties to this action.

payments to be made by AGC, commencing on December 20, 1988. Other than a partial interest payment of $9,072.62 on or about June 29, 1989, AGC has made no payments of either principal or interest.

On January 2, 1990, AGC's bank financers filed a petition in the United States Bankruptcy Court in Newark, New Jersey, which sought to place AGC in involuntary bankruptcy under Chapter 7 of the Bankruptcy Code. On March 6, 1990, Judge Tuohey of the Bankruptcy Court entered an order for relief against AGC under Chapter 7.

Notwithstanding AGC's default under the Loan Agreement and promissory note, defendants have refused payment under the Guaranty. Plaintiff commenced this action to compel performance of defendants' obligations under the Guaranty, and now move this Court for summary judgment, and for the costs of bringing this action.

## DISCUSSION

### I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "Summary judgment is appropriate if, 'after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party.'" *United States v. All Right, Title & Interest in Real Property, etc.*, 901 F.2d 288, 290 (2d Cir.1990) (quoting *Murray v. National Broadcasting Co.*, 844 F.2d 988, 992 (2d Cir.), *cert. denied*, 488 U.S. 955, 109 S.Ct. 391, 102 L.Ed.2d 380 (1988)). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The substantive law governing the case [3] will identify the facts that are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.... While the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are crucial and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there does indeed exist a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2511; *see also R.C. Bigelow, Inc. v. Unilever N.V.*, 867 F.2d 102, 107 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 64, 107 L.Ed.2d 31 (1989). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying which materials it believes "demonstrate the absence of a genuine issue of material fact." *Celotex, supra*, 477 U.S. at 323, 106 S.Ct. at 2553; *see also Trebor Sportswear Co. v. Limited Stores, Inc.*, 865 F.2d 506, 511 (2d Cir.1989). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra*, 477 U.S. at 325, 106 S.Ct. at 2554.

Once a motion for summary judgment is properly made, the burden then shifts to the nonmoving party, which "'must set forth facts showing that there is a genuine issue for trial.'" *Anderson, supra*, 477

---

**3.** The briefs of both plaintiff and defendants rely exclusively on New York law, and this Court therefore assumes that New York law governs. Under similar circumstances, the Second Circuit has stated that "we do not feel obliged to undertake an investigation" into choice of law. *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 294 (2d Cir.1986) (Friendly, J.); *see also Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 n. 5 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987).

U.S. at 250, 106 S.Ct. at 2511 (quoting Fed.R.Civ.P. 56(e)). "Conclusory allegations will not suffice to create a genuine issue. There must be more than a 'scintilla of evidence,' and more than 'some metaphysical doubt as to the material facts.'" *Delaware & H. Ry. v. Consolidated Rail Co.*, 902 F.2d 174, 178 (2d Cir.1990) (quoting *Anderson, supra,* 477 U.S. at 252, 106 S.Ct. at 2512, and *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986)).

## II. Defendants' Liability Under Guaranty

Under section 2 of the Guaranty:

Each of the Guarantors, as direct obligors and not merely as sureties, hereby unconditionally, irrevocably, jointly and severally guarantees the due and punctual payment by AGC of all principal, premium, if any, interest, fees and expenses and all other amounts payable or to become payable to the Subordinated Lenders by AGC under the Subordinated Loan Agreements when and as the same shall become due and payable (whether by acceleration or otherwise) in accordance with the terms thereof....

The Guarantors understand, agree and confirm that any Subordinated Lender may enforce this Agreement against the Guarantors without proceeding against AGC for payment.... This Agreement shall at all times constitute a guaranty of payment and not merely of collection, as provided herein, of [AGC's obligations].

Guaranty § 2.

Section 3 of the Guaranty, entitled "Guaranty Absolute," provides:

The obligations of each of the Guarantors under this Agreement ... shall be absolute, irrevocable and unconditional, irrespective of, and shall not be altered or affected by, the validity, regularity or enforceability of any provision of any Subordinated Loan Agreement, any com-

promise, alteration, amendment, modification, extension, renewal, release or other change of, or any waiver, consent or other action in respect of, any of the terms, covenants or conditions of any Subordinated Loan Agreement, the recovery of any judgment against any person or any action to enforce the same, any failure to delay in the enforcement of the obligations of AGC under any subordinated Loan Agreement or any other circumstances which might otherwise constitute a legal or equitable defense or discharge of a guarantor or surety, or which might otherwise limit recourse against the Guarantors by any Subordinated Lender. Each of the Guarantors hereby expressly and irrevocably waives all defenses, set-offs, counterclaims, recoupments, terminations or impairments whether arising hereunder or otherwise.

... To the fullest extent permitted by law, the Guarantors waive any legal or equitable defenses to the enforceability of their obligations hereunder, and the Guarantors agree that their obligations shall be absolute and unconditional and shall not be affected or discharged by any circumstance, act or event except payment in full....

*Id.* § 3.

Thus, the terms of the Guaranty could hardly be more explicit in rendering absolute defendants' obligations to plaintiff, regardless of any claims AGC might possess against Woodward. Notwithstanding the explicit waivers contained in the Guaranty, defendants' answer to the complaint filed in this action asserts a number of so-called "affirmative defenses, recoupment, set-off and counterclaim," which clearly consist of claims properly belonging to AGC.[4] Of these claims, defendants in their response to plaintiff's motion rely on a single dispute that allegedly precludes the entry of summary judgment against them.

---

**4.** Most or all of these claims were the subject of a separate lawsuit brought by AGC and the defendants in the instant case against Woodward and others. The amended complaint in that case was dismissed by Judge Michael B. Mukasey without leave to replead. *Atlantic Gypsum Co. v. Lloyds Int'l Corp.*, 753 F.Supp. 505 (S.D.N.Y.1990).

Defendants assert that a claim against Woodward arising from an ore supply contract between AGC and Woodward affects their obligations under the Guaranty. That dispute is the subject of a separate action filed by plaintiff against AGC in this Court,[5] which was placed on the Court's suspense calendar subsequent to AGC's bankruptcy.

Defendants' argument is unavailing for a number of reasons, first among them the explicit provisions of the Guaranty cited above. Second, under New York law, a guarantor sued alone by a creditor cannot assert, as a defense or counterclaim, an independent cause of action belonging to his principal. *See, e.g., Walcutt v. Clevite Corp.*, 13 N.Y.2d 48, 241 N.Y.S.2d 834, 191 N.E.2d 894 (1963); *New Jersey Bank v. Varano*, 120 A.D.2d 505, 502 N.Y.S.2d 35 (1986).

Third, the Guaranty is not conditioned upon, or in any way linked to, the ore supply contract to which defendants refer. Defendants' obligations under the Guaranty are triggered solely by plaintiff's advancement of funds under the Loan Agreement and letter of credit. Defendants do not present any contested issues of fact concerning any event connected with any party's execution of, or performance or nonperformance under, the pertinent documents.

Fourth, as plaintiff points out, even if a claim arising under the ore supply contract could excuse defendants' performance under the Guaranty, defendants clearly had knowledge of the issues surrounding the ore supply contract prior to the date of the drawdown of funds by United Jersey Bank pursuant to the Loan Agreement and letter of credit. Defendants' failure to repudiate their Guaranty before the funds were loaned acts as a waiver of this claim. *See Bank Leumi Trust Co. v. D'Evori Int'l, Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909, 914 (1st Dep't 1990).

There being no dispute as to the material facts in this matter, defendants' liability is clearly established as a matter of law. Ac-cordingly, plaintiff's motion for summary judgment is granted.

### III. Costs

Plaintiffs also move this Court for an award of the costs incurred in bringing this action to compel performance under the Guaranty. The Guaranty provides:

> The Guarantors hereby agree to indemnify and hold harmless the Subordinated Lenders from and against any loss, liability or expense (including the fees and disbursements of counsel for the Subordinated Lenders) which may be incurred by reason of any failure of either of the Guarantors to fulfill their obligations under this Section 2 upon demand by the Subordinated Lenders, as the case may be, including without limitation:
>
> (a) costs and expenses of enforcement of any obligation of the Guarantors to make any such payment hereunder and any other obligation, covenant or agreement of the Guarantors hereunder; and
>
> (b) other costs and expenses incurred by any Subordinated Lender as a result of any such failure.

Guaranty § 2.

Having found defendants' arguments to be without merit, the Court finds that plaintiff is entitled under the language of the Guaranty to recover the costs of bringing this action to enforce its rights under that Guaranty. Accordingly, plaintiff's motion for summary judgment and for costs is granted in its entirety.

### CONCLUSION

Plaintiff's motion for summary judgment and for costs is granted in its entirety. This matter is referred to a United States Magistrate Judge for an inquest on the amount of damages and costs to be awarded.

SO ORDERED.

5. *Woodward & Dickerson v. Atlantic Gypsum Co.*, No. 88 Civ. 8226 (PKL).