**INDUSTRIAL RECYCLING SYSTEMS, INC., Plaintiff,**

v.

**AHNEMAN ASSOCIATES, P.C., Defendant.**

**No. 92 CV 7782.**

United States District Court, S.D. New York.

July 18, 1995.

Alan D. Singer, Davis & Singer, White Plains, NY, for plaintiff.

Robin J. Marsico, Robert J. Gogick, New York City, Eric H. Seltzer, Gilbride, Tusa, Mirone, Last & Spellane, New York City, for defendant.

**MEMORANDUM DECISION**

PARKER, District Judge.

## FACTS

This action for malpractice and fraud is before the court on the Defendant's motion for partial summary judgment, pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. The Plaintiff, Industrial Recycling Systems, Inc. ("Indrec"), filed suit seeking damages for alleged fraud and malpractice in relation to the engineering services rendered by the Defendant, Ahneman Associates, P.C. ("Ahneman"), in connection with the closing of a landfill operated by Indrec ("the landfill").[1] Ahneman counterclaimed, seeking the balance owed for its engineering services. Ahneman has moved for partial summary judgment to determine the enforceability of a contract, dated January 22, 1992 ("1992 Agreement"), in which Indrec agreed that it was satisfied with Ahneman's services and had no dispute with the amount billed for those services. Ahneman claims that the 1992 agreement is valid and was mutually bargained for. Indrec claims that the 1992 agreement is voidable because it was executed under duress.

On May 11, 1989, the New York State Department of Environmental Conservation ("NYSDEC") ordered Indrec to submit a closure plan for the landfill after finding that it discharged leachate into state waters. The closure plan was part of a plea arrangement between NYSDEC and the president of Indrec, Robert T. Liguori ("Liguori"), who pled guilty to a misdemeanor for the leachate discharge. NYSDEC held Liguori personally responsible for the closure's consummation. The closure plan was to be submitted by February 28, 1990, and final closure of the landfill was to be completed by October 1, 1990. Indrec's closure plan deadline was extended by NYSDEC first to February 21, 1991, after an initial closure plan it submitted was rejected in May 1990, and at other times thereafter until June 1992.

In May of 1990, Indrec fired its engineer and entered into an agreement ("1990 Agree-

---

1. The landfill was operated by Barnes Landfill, Inc., an entity related to Indrec and owned by some of the principals of Indrec.

ment") with Ahneman to supply engineering services in connection with submitting and implementing another closure plan. Under the 1990 Agreement, Indrec was to pay for Ahneman's services on a monthly basis. Accounts not paid within thirty days were to be charged 18% interest. The 1990 Agreement also granted Ahneman the right to terminate its services if its monthly invoices were not paid within thirty days. Over the next several months, Indrec failed to pay the invoices in full. Indrec claims that it objected to the amount of Ahneman's invoices, but Ahneman threatened to walk off the job, leaving Liguori criminally liable for failure to submit a closure plan and close the landfill by the NYSDEC deadline.

In December of 1991, following other attempts at negotiation, Ahneman forwarded Indrec a draft of the 1992 Agreement in which Indrec agreed that it was satisfied with Ahneman's services and had no dispute with the amount billed for those services. Indrec claims that at that time it only knew that Ahneman's bills were excessive, but was unaware of the extortion, over-charging, and double billing practices engaged in by Ahneman—practices which are now the basis of its malpractice suit.

On January 22, 1992, both parties signed the 1992 Agreement. Indrec claims that it signed the 1992 Agreement under duress because Liguori feared criminal prosecution by NYSDEC for failing to comply with his plea agreement. Indrec claims that Ahneman knew of Liguori's potential criminal liability for failure to close the landfill and took advantage of this predicament by wrongfully threatening to "walk off the job" just before a February 13, 1992 deadline. For this reason, Indrec claims the 1992 Agreement is voidable for duress.

Ahneman claims that Indrec's duress defense fails for two reasons. (1) Once Indrec had defaulted on its monthly payments under the 1990 agreement, Ahneman had a contractual right to terminate its services, and therefore any threat to discontinue them was not wrongful. (2) Indrec has not shown that the circumstances permitted it no other alternative but to sign the 1992 Agreement. In addition, Ahneman claims that even if the 1992 Agreement were voidable for duress, Indrec ratified it by accepting the benefits of Ahneman's services for seven months after its execution.

## DISCUSSION

### A. Standard for Summary Judgement

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The court's responsibility is to perform "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *McNeil v. Aguilos*, 831 F.Supp. 1079, 1082 (S.D.N.Y. 1993), *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The responding party "must set forth facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See *McNeil*, 831 F.Supp. at 1082, *citing United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam) (other citations omitted). See also *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991), *citing Knight v. U.S. Fire Ins.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987) (other citations omitted).

### B. Duress

In order to prove duress, Indrec must show that there was (1) a threat, (2) unlawfully made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative. *U.S. West Financial Services, Inc. v. Tollman*, 786 F.Supp. 333, 338 (S.D.N.Y.

1992). Because Indrec has failed to establish a genuine issue of material fact as to the fourth element—that the circumstances permitted it no alternative but to accept the terms of the 1992 Agreement—the Court does not reach the other three elements.

The fourth element places a burden on the threatened party to show that the threatened breach would result in irreparable harm. "The mere threat to breach an agreement will not constitute economic duress if the threatened party can obtain performance from some other source of supply and the ordinary remedy of an action for breach of contract would be adequate." *Sosnoff v. Carter*, 165 A.D.2d 486, 489, 568 N.Y.S.2d 43, 46 (1st Dep't 1991), *citing Austin Instrument, Inc. v. Loral Corporation*, 29 N.Y.2d 124, 130–31, 272 N.E.2d 533, 535, 324 N.Y.S.2d 22, 25–26 (1971). The party claiming duress has the burden of proving that it could not find a substitute within a reasonable amount of time. See *Austin*, 29 N.Y.2d at 132, 272 N.E.2d at 537, 324 N.Y.S.2d at 27.

Assuming that finding a substitute contractor would have required an extension of time, Indrec argues that it had no choice but to continue with Ahneman on Ahneman's terms because it would have been unreasonable to request another extension from NYSDEC. Previous extensions, it alleges, were granted only at a price of several thousand dollars and when the circumstances were beyond Indrec's control. Plaintiff's answering affidavit, ¶¶ 10–12.

In *Austin*, the defendant, Loral Corp., was awarded a $6,000,000 contract with the Navy to produce radar sets. Loral subcontracted with Austin to produce precision gear components. After Austin began delivery, Loral was awarded a second Navy contract. Austin then threatened to cease deliveries under the existing subcontract unless Loral agreed to substantial price increases and ordered the gear components for the second contract through them. After contacting ten manufacturers of precision gears and finding none who could procure the parts in time to meet its commitments to the Navy, Loral acceded to Austin's demands. Later, Loral claimed duress.

The court rejected Austin's argument that Loral, in order to meet its burden, should have contacted the government and asked for an extension of its delivery dates. The Court first noted that vendor delay was common in the field. It then acknowledged that the only promise Loral received from the ten companies it contacted was for commencement of delivery, not full supply, and thus concluded that it would have been nearly impossible for Loral to estimate the length of extension to request.

Even though Loral was not required to request an extension, however, the court held that Loral still had the burden of demonstrating that it could not obtain the parts elsewhere within a reasonable time because legal authority suggested that nonperformance by a subcontractor was not an excuse for default in the main contract. 29 N.Y.2d at 132–33, 272 N.E.2d at 536–37, 324 N.Y.S.2d at 27. The Court held that Loral met its burden by contacting all of the manufacturers whom it believed capable of making the parts. 29 N.Y.2d at 132–33, 272 N.E.2d at 537, 324 N.Y.S.2d at 27.

Although Indrec may be correct in its assertion that under the circumstances it was not required to ask NYSDEC for an extension of time when Ahneman issued its threat, it has not demonstrated that the circumstances permitted it no alternative but to accept Ahneman's services. Indrec made no effort to find a substitute engineer when Ahneman allegedly threatened to breach its contract in January 1992. It claims that at the time of the alleged threat no further engineering work was required; compiling documents and pulling together the final closure plan was all that remained to be done before the February 13, 1992, deadline. Indrec, however, does not even allege that it investigated the possibility of replacing Ahneman for these tasks. Nor does it allege or offer any evidence suggesting that it pursued any other alternative in January 1992.

Therefore, because Indrec has failed to produce any evidence that circumstances permitted it no alternative but to accept the terms of the 1992 Agreement, Ahneman's motion for summary judgment on Indrec's duress defense is granted.

## C. *Ratification*

■ An agreement executed under duress is considered voidable, and not void. See *Citibank N.A. v. Real Coffee Trading Co. N.V.*, 566 F.Supp. 1158, 1163 (S.D.N.Y.1983). It is well-settled that "one who would repudiate a contract procured by duress, must act promptly, or will be deemed to have elected to affirm it." *Fayard v. Henry Holt & Co., Inc.*, 726 F.Supp. 438, 447 (S.D.N.Y.1989) (citation omitted).

Here, Ahneman argues that even if the 1992 Agreement is voidable on the ground of duress, Indrec subsequently ratified the agreement by accepting Ahneman's services for seven months. In response, Indrec argues that it suffered continuing duress from the time it executed the 1992 Agreement until the final acceptance of the closure plan at the end of June 1992. It further alleges that it stopped payments in August of 1992, shortly after the landfill was finally closed. Indrec contends that under *Sosnoff v. Carter*, 165 A.D.2d 486, 568 N.Y.S.2d 43 (1st Dep't. 1991), continuing duress tolls the time period in which a party must repudiate a contract on the ground of duress.

■ The test for determining whether a party ratified a contract through acquiescence is whether the party claiming duress acted reasonably under the circumstances in asserting the claim. *See Fayard*, 726 F.Supp. at 447 (holding that publisher ratified contract by actions taken in accordance with contract); *Bank Leumi Trust Company of New York v. D'Evori International, Inc.*, 163 A.D.2d 26, 558 N.Y.S.2d 909 (1st Dep't 1990) (holding that defendant's delay of six months before asserting claim of duress while accepting benefits of plaintiff's performance constituted a waiver).

In *Sosnoff*, however, the court held that "where during the period of acquiescence or at the time of the alleged ratification the disaffirming party is still under the same continuing duress, he has no obligation to repudiate until the duress has ceased." [2] *Sosnoff*, 165 A.D.2d at 492, 568 N.Y.S.2d at 47. The court further held that triable issues of fact precluded summary judgment because the defendant: (1) detailed how the dire financial circumstances which compelled him to sign the agreement continued; and (2) alleged that he ceased payment on the agreement promptly when he believed his other financial backers would not treat the action as a default on their obligations. The court also noted that the defendant's repeated protests as to the conduct of the plaintiff were some evidence of the defendant's preservation of its claim for economic duress.

■ Here, because Indrec has not shown that it explored alternatives to accepting Ahneman's services throughout the period between February and August of 1992, it fails to establish a necessary element of continuing duress. It never contacted other engineers to explore the possibility of replacing Ahneman, nor has it shown that Ahneman's services were so unique as to preclude substitution by any other engineer. Furthermore, Indrec has not demonstrated that it repeatedly protested Ahneman's conduct. In his affidavit, the President of Indrec stated that after January 1992 he "did not bother to question any more bills because [he] didn't think it would make any difference." Plaintiff's Answering Affidavit, ¶ 22.

Therefore, even if Indrec had shown that the circumstances permitted no alternative but to sign the 1992 Agreement because of the imminence of the February 13, 1992, deadline, it has failed to show that this dire situation that permitted no alternative continued for the next seven months.

**2.** In *Sosnoff*, the defendant, a "sophisticated and successful real estate developer," entered into a partnership with the plaintiff, "a wealthy investor and money manager" to build a residential project in Manhattan. As a result of the market crash in 1987, the plaintiff repudiated his partnership obligations days before a scheduled acquisition of the Ritz Plaza site. The defendant argues that faced with financial ruin, he was forced to agree to a transformation of the plaintiff's equity investment into a debt and to give the plaintiff a note for that debt. The plaintiff sued on the note and the defendant interposed the defense of economic duress. The plaintiff argued that the defendant had ratified the creditor-debtor relationship which replaced the partnership by continuing to make payment of interest and principal on the note, for almost two years after the parties entered the agreement.

In conclusion, Defendant's motion for partial summary judgment is granted.

SO ORDERED.