■ ROBERT TEBBUTT et al., Appellants, v NIAGARA MOHAWK POWER CORPORATION et al., Respondents.—Mahoney, P. J.

Defendant Niagara Mohawk Power Corporation owns a building and land at 2 Main Street in the Village of Saranac Lake, Franklin County, abutting a dam known as the Lake Flower Dam. In 1983 the Department of Environmental Con-

servation (DEC) commenced administrative proceedings against the village and Niagara Mohawk requesting an order compelling an investigation into the safety of the dam and ordering immediate repair or any structural deficiencies. In order to avoid costly litigation of determining whether it or the village owned the dam and was responsible for any repairs, Niagara Mohawk attempted to sell its interest in the property.

On December 6, 1983, plaintiffs, Robert Tebbutt and David Rowell, acting through their attorney William Cantwell, made an offer to purchase the parcel from Niagara Mohawk for $30,000. Included in the offer letter was plaintiffs' agreement to "purchase the property with whatever interest your company may have in the dam/riverbed adjoining the property". Defendant John J. Hennigan, Niagara Mohawk's attorney, notified plaintiffs' attorney on December 15, 1983 that "Niagara Mohawk management has approved the sale of its building and land * * * subject to agreement on the terms of this sale, to your clients, for $30,000". After listing eight specific terms which would be required by Niagara Mohawk, the responding letter went on to state: "Please advise whether the foregoing terms are satisfactory to your clients and we can proceed to prepare whatever contract documents may be required".

On December 27, 1983, Cantwell requested that Hennigan "prepare a contract of sale and foreward". After not hearing anything, Cantwell wrote to Hennigan on January 6, 1984 requesting that a copy of the sale contract be sent to him so that he could "review the same". On January 10, 1984, Hennigan orally advised Cantwell that two sets of purchasers were interested in the subject property and Niagara Mohawk was undecided about its course of action. Cantwell asserted both by telephone and letter that his clients, plaintiffs herein, had a "fully enforceable agreement with Ni Mo for the purchase" of the land and he enclosed in the letter, dated January 10, 1984, a deposit check of $3,000. Hennigan returned the check the next day stating that since there were "many points yet to be negotiated and no contract of sale has been executed", plaintiffs did not have an enforceable agreement.

Plaintiffs, in January 1984, sued Niagara Mohawk and Hennigan for specific performance of an alleged contract of sale. In lieu of an answer to plaintiffs' complaint, Niagara Mohawk tendered a bargain and sale deed to plaintiffs. Plaintiffs' second attorney, Daniel Mahoney, notified Hennigan that the deed was not acceptable to plaintiffs since it contained a

"hold harmless" clause. Ultimately, a closing date was agreed upon but Niagara Mohawk insisted that the "hold harmless" clause remain in the deed conveying the property to plaintiffs. Negotiations between the parties continued until January 2, 1985 when Hennigan and Niagara Mohawk answered plaintiffs' complaint. On February 27, 1985, Niagara Mohawk decided to drop the "hold harmless" clause and enclosed a proposed closing statement in a letter to plaintiffs. However, in March 1985 there was a settlement between Niagara Mohawk and DEC and, as a result, Niagara Mohawk refused to close title. Thereafter, Niagara Mohawk and Hennigan moved for summary judgment dismissing the complaint. The motion was granted and this appeal by plaintiffs ensued.

The order appealed from must be affirmed. It is well settled that "if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed" *(Scheck v Francis,* 26 NY2d 466, 469-470). The contemplation of a formal, binding, written contract in this case is evidenced by the correspondence between the parties' attorneys. In Hennigan's December 15, 1983 letter, he expressly requests: "Please advise whether the foregoing terms are satisfactory to your clients and we can proceed to prepare whatever contract *documents* may be required" (emphasis supplied). This statement in Hennigan's letter clearly expresses Niagara Mohawk's understanding that the offer would not become a contract until placed in writing and signed. Furthermore, plaintiffs' attorney expressly requested that Hennigan prepare a contract of sale and forward it to his office. Further evidence that plaintiffs' attorney considered the matter incomplete until a written contract was signed is contained in his letter of January 6, 1984 to Niagara Mohawk wherein he asked: "Would you please send me the contracts for purchase and sale of the Niagara Mohawk building so that I may *review the same"* (emphasis supplied). Clearly, plaintiffs' attorney intended to review the terms of a written contract prior to binding his clients to a purchase of the property. Here, it cannot be questioned that the written exchanges between the parties establish that the agreements were to take effect only after they had been expressed in a deed and signed by the parties. Without any intent to be bound by prewritten contract negotiations there is no mutual assent, and without mutual assent there is no contract as a matter of law *(see, Schwartz v Greenberg,* 304 NY 250; *Alderman v Central N.Y. Arterial Mkts.,* 24 AD2d 1046).

Next, plaintiffs' contention that an alleged oral contract exists and is supported by sufficient writings between the parties to constitute a memorandum in compliance with the Statute of Frauds is meritless. Since there is no evidence that Hennigan was authorized in writing to sell real property for Niagara Mohawk, any alleged contract between plaintiffs and Niagara Mohawk based on Hennigan's communication is void under the Statute of Frauds (General Obligations Law § 5-703; see, Raoul v Olde Vil. Hall, 76 AD2d 319).

We also reject plaintiffs' contention that the actions of Hennigan and Niagara Mohawk clothed Hennigan with the apparent authority to execute the sale of the subject property and that Niagara Mohawk is therefore bound to sell to plaintiffs by the principles of agency by estoppel or ratification. There is no evidence that Niagara Mohawk or Hennigan intentionally or carelessly caused plaintiffs to believe Hennigan had the power to bind Niagara Mohawk in any alleged oral contract. Further, since the Statute of Frauds requires that an agent's authorization to sell property be in writing (General Obligations Law § 5-703 [1], [2]; § 5-1111), plaintiffs could have requested written proof of Hennigan's authority to act. We conclude that Niagara Mohawk and Hennigan have established their defense to plaintiffs' causes of action to sufficiently warrant the court to direct judgment in their favor as a matter of law.

Finally, since we have determined that no valid contract of sale ever existed between plaintiffs and Niagara Mohawk, plaintiffs' cause of action against Hennigan for intentional interference with contractual relations must fail (see, Warner Bros. Pictures v Simon, 21 AD2d 863, affd 15 NY2d 836).

Order affirmed, with costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.