EDISON STONE CORPORATION, Appellant, v 42ND STREET DEVEL-
OPMENT CORPORATION, Respondent.

First Department, February 28, 1989

APPEARANCES OF COUNSEL

*Steven R. Miller* of counsel *(David F. Segal* with him on the brief; *Jaffe & Segal,* attorneys), for appellant.

*Kevin J. Harrington* of counsel *(Rivkin, Radler, Dunne & Bayh,* attorneys), for respondent.

## OPINION OF THE COURT

SULLIVAN, J. P.

Plaintiff Edison Stone Corporation appeals from the denial of its motion for summary judgment in lieu of complaint on a promissory note on which, after default, an $80,276.04 unpaid balance of principal is due. Since no triable issues are presented and no defense to the payment of the note exists, we reverse and grant summary judgment in the amount sought.

The facts are not in dispute. On or about January 13, 1982, the Aeroflex Museum, as landlord, and Edison, as tenant, entered into a lease of the entire parcel of real property located at 551-555 West 42nd Street, in New York City, for a term ending March 31, 1992, for use as a public parking lot. The lease contemplated that Edison would make certain improvements in addition to those it had already made at the time the lease was signed.

Some 15 months earlier, on October 1, 1980, Aeroflex had executed a written contract to sell the premises to 42nd Street Development Corp., which, in turn, had assigned its interest to 11-42 Project Joint Venture (Joint Venture). Thus, as stated at paragraph 2 (D) of the lease: "The interest of * * * Development * * * as contract vendee of the fee of the demised premises was assigned to * * * Joint Venture, a joint venture between * * * Development * * * and Esal Commodities (U.S.A.) Ltd. Landlord has entered into this lease agreement with Tenant at the request of * * * Joint Venture, and * * * Joint Venture has consented to Landlord's entry into this lease agreement and has agreed to be bound by the terms hereof in the event that it acquires fee title to the demised premises."

Joint Venture's consent to the lease and its agreement to be bound by the terms thereof were expressed in a signed document appended to the lease. As recited therein, the consideration for Joint Venture's consent was the payment to it of

$32,918.[1] Furthermore, more than 75% of each monthly installment of rent required to be paid by Edison under the lease was to be turned over to Joint Venture. Thus, while the lease required monthly payments of $5,314.75, all but $1,200, or $4,174.75, was to be "paid over to" Joint Venture. The lease also permitted the landlord to terminate the lease under certain circumstances. If it exercised the right, the landlord would be required to pay Edison a sum based on its actual improvement costs and calculated pursuant to a formula contained in the lease, but which was not to exceed Edison's anticipated improvement costs of $38,000.

Subsequently, Development and Edison agreed, in a June 11, 1982 letter prepared by Development and signed by each of the parties, that if Development acquired title within one year thereof Edison would surrender possession of the premises in consideration of Development's payment to it of $156,000, of which $36,000 was to be paid on vacatur and the balance under a $120,000 promissory note.

Within one year of the agreement Development acquired title to the premises. Honoring its commitment under the June 11, 1982 letter agreement, Edison surrendered possession and received from Development a check for $36,000 together with a note, dated August 12, 1982, in the sum of $120,000. Nineteen installments in varying amounts were thereafter paid to Edison from October 28, 1982 through October 18, 1985, reducing the principal balance of the note to $80,276.04. When Development failed to pay any additional sums, Edison commenced this action to enforce payment.

In his affidavit in opposition to the motion for summary judgment, Frederic S. Papert, Development's president, alleged that in 1981[2] he negotiated an arrangement with Edison allowing it "temporarily" to use the leased premises as a parking lot; that he rejected Edison's requests for a lease; that Edison occupied the premises from June 1981 on the basis of a "month-to-month tenancy"; that while he was on the West Coast during the early months of 1982, Edison "conspired and collaborated with Esal Commodities (U.S.A.) Inc.", Development's "business partner", and secured a 10-year lease for the

---

1. An additional $9,600 was paid to Aeroflex, resulting in a total expenditure by Edison of $42,518.

2. During this period, Development's only connection with the premises was that of a coventurer in Joint Venture, an entity that had been assigned the right to purchase the premises.

premises, which Development never signed; and that the terms of the lease "effectively rendered the [leased premises] undevelopable" because Edison's possession discouraged the substantial expenditure needed to complete the working drawings, which were a prerequisite to the issuance of building permits.

Papert further alleged that Development entered into a new partnership with a real estate developer, and that this new partnership refused to commit any funds to the development of the site unless the leased premises were "unencumbered". Allegedly under pressure from the new partnership to deliver a vacant site, Development negotiated with Edison for the surrender of its lease, to which Edison consented by entering into the June 11, 1982 letter agreement.

Papert argued that Development "had no choice but to sign the note", which was not legally binding "since it was signed only under the duress which was the direct and intended result of [Edison's] fraudulent conduct." Significantly, Papert concedes that "[t]he reason we stopped making payment on the note is, to put it plainly, that we ran out of money" and that "[o]ur present financial straits preclude us from making payment at the moment."

In making 19 payments on the note over a three-year period, without objection, until it "ran out of money", Development has, as a matter of law, ratified the note and waived any right it might have had to repudiate its obligations thereunder. (Bethlehem Steel Corp. v Solow, 63 NY2d 611, mot to dismiss appeal granted 45 NY2d 837; Marine Midland Bank v Stukey, 75 AD2d 713, affd 55 NY2d 633; Port Chester Elec. Constr. Corp. v Hastings Terraces, 284 App Div 966.) As this court stated in Bethlehem Steel, "One who would repudiate a contract procured by duress, must act promptly, or he will be deemed to have elected to affirm it" (supra, 63 AD2d, at 612).

In Marine Midland Bank v Stukey (supra), the makers of a promissory note, executed on October 10, 1975, raised a defense of duress. They admittedly had paid interest on the note without protest from October 10, 1975 until October 1, 1978. The court held that the "claimed defense of duress has been waived" (75 AD2d 713, supra). Similarly, in Port Chester Elec. Constr. Corp. v Hastings Terraces (supra) the court rejected a defense of duress, where the notes were made and executed on May 11, 1951, but the claim of duress was not asserted until

February 16, 1953, almost two years thereafter. The duress, if any, would have terminated in November 1951. As already noted, Development's economic duress defense was not raised at any time during the three-year period from October 1982 through October 1985.

■ Moreover, even if it were not otherwise waived, the defense of economic duress is not sustainable in the circumstance presented, since Edison did not wrongfully threaten to remain in possession unless Development executed and delivered the note. Edison made out a prima facie case on the note by proof of due execution and Development's failure to make payment in the manner provided for therein. *(Seaman-Andwall Corp. v Wright Mach. Corp.,* 31 AD2d 136, *affd* 29 NY2d 617.)* To defeat the motion, Development was obliged to raise a bona fide and substantial triable issue of fact. *(Leumi Fin. Corp. v Richter,* 24 AD2d 855, *affd* 17 NY2d 166; *Mackey v Dominick & Dominick,* 47 AD2d 722, *affd* 38 NY2d 957.)* "The party opposing the [summary judgment] motion * * * must produce evidentiary proof in admissible form sufficient to require a trial of material questions of fact on which the opposing claim rests". *(Gilbert Frank Corp. v Federal Ins. Co.,* 70 NY2d 966, 967.)* Bald, conclusory allegations, even if believable, are not enough. *(Supra; Ehrlich v American Moninger Greenhouse Mfg. Corp.,* 26 NY2d 255.)* It was incumbent on Development to "establish evidence of all elements of economic duress to defeat the motion for summary judgment". *(Finserv Computer Corp. v Bibliographic Retrieval Servs.,* 125 AD2d 765, 766.)*

"A contract may be voided on the ground of economic duress where the complaining party was compelled to agree to its terms by means of a wrongful threat which precluded the exercise of its free will." *(Muller Constr. Co. v New York Tel. Co.,* 40 NY2d 955, 956.)* It is equally well settled that "[t]he threatened exercise of a legal right cannot constitute duress". *(Marine Midland Bank v Stukey,* 75 AD2d 713, *supra.)* Thus, the rule has evolved that "[t]he existence of economic duress is demonstrated by proof that one party to a contract has threatened to breach the agreement by withholding performance unless the other party agrees to some further demand". *(805 Third Ave. Co. v M.W. Realty Assocs.,* 58 NY2d 447, 451.)*

In *805 Third Ave. (supra),* the parties had entered into a September 1979 contract for the sale by the defendant to the plaintiff of a portion of its air rights. In July 1980, the parties

executed a written modification of the contract which the plaintiff, on the grounds of economic duress, then sought to rescind, alleging, essentially, that the defendant was required to deliver certain documents pursuant to the 1979 contract, but that it refused to do so unless the plaintiff agreed to a modification on terms more favorable to the defendant; that the defendant's refusal was "unconscionable" and "oppressive" and done "maliciously" to apply economic duress to the plaintiff because the defendant knew that pursuant to the terms of the ground lease to which the plaintiff was a party any delay in construction would cause serious and irreparable injury to the plaintiff and its general partners. Analyzing the relevant contractual provisions, the Court of Appeals found that the defendant's delivery of the documents was conditioned on the prior delivery by the plaintiff of a promissory note, letter of credit and certain architectural drawings, conditions which the plaintiff admittedly failed to satisfy. The court rejected the plaintiff's assertions of economic duress, holding that "a party cannot be guilty of economic duress for refusing to do that which it is not legally required to do." *(Supra,* at 453.)

In *Muller Constr. Co. v New York Tel. Co.* (40 NY2d 955, *supra),* the plaintiff sought a declaration of nullity as to a settlement agreement on the ground that it was induced by the defendant's threat to terminate their earlier contract, which gave the defendant the right to cancel on an architect's certificate of substantial breach. In holding that the defendant properly exercised its right to cancel while at the same time seeking an accommodation with the financially hard-pressed plaintiff, the court found that "there is no possibility that the plaintiff could present evidence which would establish that the defendant's threatened cancellation was in excess of its contractual rights and, hence, was wrongful". *(Supra,* at·956.)

Guided by these principles, we find that Development failed to demonstrate the existence of a genuine issue of fact concerning its economic duress defense. Indeed, the documentary evidence clearly shows that the defense is entirely devoid of merit. Development alleges that it "never agreed to and never signed" the lease, ignoring the fact that Joint Venture, the entity in which it was a coventurer and the contract vendee of the leased premises, had expressly consented to the execution of the lease by Edison, as tenant, and Aeroflex, as landlord. Moreover, Joint Venture further agreed to be bound by the terms of the lease in a promise supported by valuable consid-

eration. Conspicuously absent from Development's affidavit in opposition is any claim that its "business partner" in Joint Venture lacked the authority to approve the lease; that Edison was aware of this limitation on the business partner's authority; or that Aeroflex, the owner of the leased premises, was part of the so-called "conspiracy".[3]

As the tenant under a valid lease, Edison was not legally required to surrender possession of the leased premises to Development in 1982. It is equally clear that Edison did not wrongfully threaten to remain in possession until March 31, 1992 since it had an absolute legal right to do so. Not only is there an absence of proof in this record, but not even a single allegation, that Edison threatened to breach the lease by "withholding performance" of its obligations thereunder unless Development executed the note. Although Edison would have been obliged to vacate if on 60-day notice Development satisfied the conditions specified in paragraph 2 (E) of the lease, i.e., executed a bona fide contract for the erection of a permanent building on the site and obtained approval of building plans from all appropriate authorities, Development admits that the requisite conditions were not satisfied.

■ While Development may have been in a weak bargaining position and under financial pressure to deliver a vacant site, this pressure was exerted by a third party, not Edison. In any event, the existence of financial pressure and an unequal bargaining position are insufficient to constitute economic duress. *(See, Bethlehem Steel Corp. v Solow,* 63 AD2d 611, *supra.)* Thus, contrary to the motion court's determination, Development cannot possibly prove that Edison caused its economic distress. Edison was free to enter into a lease with Aeroflex, as landlord of the premises, just as Aeroflex was free to contract with Joint Venture.

■ Although finding that Development raised an issue as to whether the note was the "product of economic duress or fraud", the motion court did not address the fraud issue at all

---

3. Development cannot deny that the acts of Esal were binding on Joint Venture *(see, Reeve v Cromwell,* 227 App Div 32; Partnership Law § 20), because, *inter alia,* "[l]ike a partnership, a joint venture is responsible for the conduct of one of the joint venturers" *(Najjar Indus. v City of New York,* 87 AD2d 329, 333, *affd* 68 NY2d 943). Development failed to submit any probative evidence to show that the authority of its admitted "business partner" was limited, and that Edison was aware of the alleged lack of authority. *(See, Board of Managers v Weather Vane Constr. Corp.,* 85 AD2d 589.)

in its decision. The consideration for the note was clearly not fraudulent since, as the instrument itself recites, value was received, i.e., *inter alia,* Edison's surrender of a valuable leasehold interest in an area of Manhattan undergoing substantial development, under an arm's length business transaction.

■ Development does not allege that Edison, by a false representation, fraudulently induced Aeroflex to sign the lease or Joint Venture to consent thereto. The existence of a false representation is an essential element of a fraud claim. *(Reno v Bull,* 226 NY 546, 550; *cf., Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403.) Any claim based on fraud by concealment would be similarly deficient, since an essential element of any such claim is a duty to reveal. *(Karl v Mobil Oil Co.,* 90 AD2d 992.) Development cannot seriously argue that Edison owed it a duty to reveal the content of its discussions with Aeroflex, the then owner of the leased premises. Even assuming that such a duty existed, there was clearly no breach because Joint Venture was duly apprised of, and, in any event, consented to, the transaction. In any event, as the maker of the note, Development does not raise an issue of fact merely by alleging, in conclusory fashion, that the consideration given for the note was fraudulently obtained. To resist summary judgment, "[i]t was essential for the defendant * * * in claiming absence of consideration, to state [its] version of the facts in evidentiary form." *(Ehrlich v American Moninger Greenhouse Mfg. Corp.,* 26 NY2d 255, 259, *supra.)* Bare allegations of fraud are insufficient to state a cause of action. *(Greschler v Greschler,* 71 AD2d 322, *mod on other grounds* 51 NY2d 368.) To plead such a cause of action, a party must allege representation of a material existing fact, falsity, scienter, deception and injury. *(Reno v Bull, supra,* 226 NY, at 550.) Furthermore, each of these essential elements must be supported by factual allegations sufficient to satisfy CPLR 3016 (b), which requires, in the case of a cause of action based on fraud, that "the circumstances constituting the wrong shall be stated in detail." CPLR 3016 (b) "imposes a more stringent standard of pleading than the generally applicable 'notice of the transaction' rule of CPLR 3013, and complaints based on fraud * * * which fail in whole or in part to meet this special test of factual pleading have consistently been dismissed". *(Lanzi v Brooks,* 54 AD2d 1057, 1058, *affd* 43 NY2d 778; *see,* 60 NY Jur 2d, Fraud and Deceit, § 227.)

Since the essential elements of a fraud claim are conspicu-

ously absent from its opposition papers, Development has completely failed to sustain its pleading burden. Genuine proof of the alleged fraud is required to create a triable issue of fact; conclusory statements, such as those found in Development's opposition papers, are insufficient to defeat summary judgment. *(Hogan & Co. v Saturn Mgt.,* 78 AD2d 837.)

Finally, having accepted the benefits of the lease consisting of its share of the $42,518 payment by Edison and a portion of the rent, Development is foreclosed from attacking the transaction on the grounds of alleged fraud. *(See, New York Tel. Co. v Jamestown Tel. Corp.,* 282 NY 365, 372-373.) This is particularly true where, as here, Development unreasonably delayed in asserting its claim. *(Supra; see also,* 36 NY Jur, Limitations and Laches, § 161.)

Accordingly, the order of the Supreme Court, New York County (Myriam J. Altman, J.), entered December 2, 1987, denying plaintiff's motion for summary judgment in lieu of complaint without prejudice to renewal after completion of discovery, should be reversed, on the law, with costs and disbursements, and the motion granted.

KASSAL, ROSENBERGER and WALLACH, JJ., concur.

Order, Supreme Court, New York County, entered on December 2, 1987, unanimously reversed, on the law, and the motion for summary judgment in lieu of complaint granted. Appellant shall recover of respondent $250 costs and disbursements of this appeal.