William K. REAGAN, and R.O.A.
General, Inc., a Utah corporation,
Plaintiffs,

v.

BANKERS TRUST COMPANY, a
New York bank corporation,
et al., Defendants.

Civ. Nos. 91–C–313J, 92–
C–423 and 92–C–103.

United States District Court,
D. Utah,
Central Division.

April 27, 1994.

Robert S. Campbell and Jay Butler, Salt Lake City, UT, for plaintiffs.

Clark Waddoups, Robert S. Clark and Mark James, Salt Lake City, UT, for defendant Bankers Trust Co.

## MEMORANDUM OPINION AND ORDER

JENKINS, District Judge.

The above-captioned action came before this Court on December 21, 23, and 30, 1993, and January 6, 1994, for purposes of a continuing Final Pretrial Conference. Robert S. Campbell, Esq. and Jay Butler, Esq. appeared on behalf of the plaintiffs; Clark Waddoups, Esq., Robert S. Clark, Esq. and Mark James, Esq. appeared on behalf of the remaining defendant, Bankers Trust Company ("Bankers Trust"). Prior to the Final Pretrial Conference, the parties had briefed and argued the defendants' detailed motions for summary judgment, which were heard on June 1, 1993 and were taken under advisement at that time. In the intervening weeks between the summary judgment hearing and the Final Pretrial Conference, the plaintiffs reached accord with Revere National Corporation and related corporate and individual defendants ("the Revere defendants"), and voluntarily dismissed this action as against them. Bankers Trust also filed a Second Motion for Summary Judgment, primarily attacking plaintiffs' damages theories, which was fully briefed by the parties prior to the Final Pretrial Conference.

During the Final Pretrial Conference, the Court took the opportunity to review with counsel the parties' respective theories of the case and the substance of the evidence that would be offered to support them. The proposed form of Pretrial Order submitted by the parties on December 1, 1993 identifies claims, defenses and issues in some detail. The existing pleadings and plaintiffs' proposed Third Amended Complaint also offer some guidance.

 This action arises out of events and circumstances surrounding a proposed commercial loan transaction between the parties, outlined in a letter issued by Bankers Trust to R.O.A. General, Inc. re: "Proposed Financing of R.O.A. General, Inc. and affiliates," dated January 16, 1991 (the "Commitment Letter").[1] Bankers Trust agreed to the funding and syndication of a $33 million loan package to plaintiffs, provided that a series of conditions precedent were met, including Bankers Trust's own satisfaction with its due diligence on the transaction.[2] As the Eleventh Circuit observed in *Brown–Marx Assocs. Ltd. v. Emigrant Sav. Bank*, 703 F.2d 1361 (11th Cir.1983):

Courts have usually treated the terms and conditions of a loan commitment as conditions precedent to the lender's obligation to perform.... The loan commitment fee is paid for the privilege of later borrowing the money if the conditions are met.... The language of the loan commitment here expressly provides that compliance with the minimum annual rentals provision is a "condition" to receiving the loan. Concerning such an express condition, 5 *Williston on Contracts* (Third Edition), Section 675, states:

As a general rule, conditions which are either expressed or implied in fact must be exactly fulfilled or no liability can arise on the promise which such conditions qualify.

*Id.* at 184.

---

1. In subsequent correspondence and documentation, Bankers Trust frequently refers to this document as the "Proposed Financing Letter."

2. Our willingness to provide the financing described in this letter is subject to our satisfactory completion of such due diligence and our continuing satisfaction therewith and no infor-

mation coming to our attention which we believe could have a material adverse impact on the business operations, financial condition or prospects of the Borrowers ... and verification of the legal and factual premises upon which our proposal is based.
Commitment Letter at 2 (Reagan Exhibit No. 8 [B007070–7092] ).

703 F.2d at 1367 (citations omitted). Noting that "[t]he [substantial performance] doctrine ... is not primarily concerned with substantial performance of a 'condition,' " the court in *Brown–Marx* held that where a loan commitment was conditioned on $714,447 annual rentals, $706,176 in annual rentals did not suffice; "the bank was entitled to require total compliance with the minimum annual rental requirement." *Id.* at 1369. Bankers Trust's "commitment" to make the loan to plaintiffs as reflected in its Commitment Letter must thus be read in light of its own express conditions, strictly enforced. *See* E. ALLAN FARNSWORTH, CONTRACTS § 8.3, at 571 (2d ed. 1990) ("If the occurrence of a condition is required by the agreement of the parties, rather than as a matter of law, a rule of strict compliance traditionally applies.").

Plaintiffs intended to apply the proceeds of the Bankers Trust loan package, *inter alia,* to refinance an existing loan obligation at First Security Bank and to go forward with the $10.5 million acquisition of four advertising properties in Texas pursuant to an option purchased from the Revere defendants for $1 million. By its own terms, the Revere option would expire March 31, 1991.

It is uncontroverted that in the process of conducting due diligence concerning the loan commitment, Bankers Trust determined not to pursue syndication of the $33 million package, to reduce the amount of the proposed loan to $22.5 million, and to demand that additional conditions be satisfied by plaintiffs before the loan would be made. Those conditions are memorialized in a second document between Mr. Reagan and Bankers Trust, first signed by Mr. Reagan on April 4, 1991, but by its terms effective March 27, 1991. *See* Letter to William K. Reagan & R.O.A. General, Inc. from Bankers Trust Company, dated "as of" March 27, 1991, [B 007125–7131] (the "Supplemental Commitment Letter"). Negotiations between the parties continued through the end of March, but ultimately the loan was not made.

Plaintiffs' Statement of Claims identifies three causes of action: (1) breach of express contract under the January 16, 1991 Commitment Letter; (2) breach of the implied covenant of good faith and fair dealing in relation to the same; and (3) common law fraud in connection with the Supplemental Commitment Letter.[3] Further, plaintiffs argue that the "Supplemental Commitment Letter" is voidable on grounds of economic duress and should be rescinded. *See* Transcript of Pretrial Conference, December 30, 1993 ("Tr. 12/30/93"), at 71:3–16.

Bankers Trust responds that plaintiffs failed to satisfy certain conditions precedent under the January 16, 1991 Commitment Letter and the subsequent Supplemental Commitment Letter—primarily Bankers Trust's requirement that plaintiffs supply a written opinion of seller's counsel concerning specific aspects of the purchase of the Texas properties. Bankers Trust contends that Mr. Reagan expressly agreed to the conditions set forth in the Supplemental Commitment Letter, thereby releasing plaintiffs' claims under the original January 16, 1991 Commitment Letter, and that he did so knowingly, upon advice of counsel, and in the exercise of free will. Further, Bankers Trust asserts, Mr. Reagan failed to disclose the degree of hostility and acrimony between himself and the Revere defendants, information which Bankers Trust deemed to be material. Bankers Trust submits that even if allowed to be filed, plaintiffs' claim for breach of the covenant of good faith and fair dealing is not supported by the facts and that plaintiffs' fraud claim fails as a matter of law for lack of proof of intent, reasonable reliance, causation and damages. Bankers Trust also pleaded a counterclaim for transaction expenses, attorney's fees and costs incurred in connection with the abortive loan transaction.

The Supplemental Commitment Letter contains, among other terms, the following language:

> Bankers Trust believes it has no obligation to fund under the Proposed Financing Letter because, among other reasons, it is not satisfied with the results of its due diligence which has brought to its attention

---

3. The second and third causes of action are the subject of plaintiffs' proposed Third Amended Complaint, for which leave to file had been re-quested by plaintiffs, but had not been granted by the time of the Final Pretrial Conference.

information which could have a material adverse effect on the business operations financial condition or prospects of you and the other borrowers. You contend that such matters do not excuse or relieve Bankers Trust from any obligation it may have to fund under the Proposed Financing Letter. To resolve our differences and with no party admitting any liability or wrong doing, in consideration of Bankers Trust entering into this agreement, *you hereby agree to release, waive or otherwise abandon any claim you or your affiliates may have or hereafter may have* concerning or arising out of (i) the inclusion in the definitive loan documentation of the terms specified in this letter, and Bankers Trust's insistence upon those terms, (ii) your compliance with the terms of this letter and (iii) Bankers Trust's conduct of its due diligence to date including, without limitation, the timeliness of its advice to you of the treatment of the information received and results of that due diligence.

While this paragraph does not exhaust all of the imaginable claims that might arise between plaintiffs and Bankers Trust, the language is unambiguous in its release of all existing and subsequent claims "concerning or arising out of ... the terms specified in this letter" and Bankers Trust's demand that those terms be satisfied as a condition precedent to funding the loan. Among "the terms specified in this letter" was the requirement of that documentation "be delivered sufficiently prior to a requested funding to permit Bankers Trust and its counsel to conduct a reasonable review thereof," including, at Paragraph 2.(i), "The final form of Merger Agreement together with the form of *the opinion of seller's counsel....*" (Emphasis added.) Bankers Trust contends that on or after February 9, 1991, plaintiffs were aware of its requirement of an opinion from seller's counsel concerning the acquisition of the Texas properties.

It is uncontroverted that on March 21 and 22, the terms set forth in the Supplemental Commitment Letter were discussed by Mr. Reagan and representatives of Bankers Trust.[4] On March 22, Mr. Reagan "reached substantial agreement with Bankers Trust" on the definitive terms of the transaction. Second Affidavit of William K. Reagan, dated April 11, 1991, at 5, ¶ 11; *see also* Tr. 12/30/93, at 37:23–40:18. More specific requirements pertaining to the opinion of seller's counsel were faxed to Mr. Reagan's counsel that same evening. Tr. 12/30/93, at 41:1–6, 49:5–50:4, 51:16–52:17.

Plaintiffs' counsel does not dispute that the particulars of the opinion of seller's counsel demanded by Bankers Trust were spelled out to Mr. Reagan's counsel no later than the evening of March 22. *Id.* To the contrary, Mr. Reagan and his counsel persisted in their efforts to obtain the opinion of counsel demanded by Bankers Trust through the date of closing, March 29, and even into the next day, Saturday, March 30. Tr. at 56:15–58:11, 66:23–67:6. However, no written opinion of seller's counsel was finally obtained.

The release language found in the Supplemental Commitment Letter would appear to encompass any claims plaintiffs may have had that arose out of Bankers Trust's insistence that such an opinion letter be obtained. It would also extinguish any claims arising out of Bankers Trust's treatment of plaintiffs' failure to meet this condition, including its decision not to go forward with the loan transaction.

Mr. Reagan also complains of the failure of Bankers Trust to inform him of adverse information obtained in the course of its due diligence, and of its determination not to proceed with syndication and funding of the loan as originally envisioned. *See, e.g.,* Tr. 12/30/93, at 68:1–69:13. Yet the Supplemental Commitment Letter's release language as quoted above appears to cover this ground as well; the release of existing and subsequent claims embraces "Bankers Trust's conduct of its due diligence to date including, without limitation, the timeliness of its advice to you

---

4. Plaintiffs' counsel recounts that Mr. Reagan was present at the March 22 meeting with his counsel, William H. Adams, Esq. and Helen D. Chaitman, Esq., Reagan's "lender liability" counsel, then newly retained. Attending the meeting for Bankers Trust was Terence J. Mogan, a senior financing officer, William W. Archer and an attorney, Melvin Yellen. Tr. 12/30/93 at 37:23–38:22.

of the treatment of the information received and results of that due diligence."

Plaintiffs' theories of liability survive the Supplemental Commitment Letter only if that document, with its express release of all such claims, is invalid due to fraud in the inducement, or economic duress, as plaintiffs have argued. *See* Tr. 12/30/93, at 71:7–13.

The uncontroverted facts in the present record lend little support to plaintiffs' allegations of economic duress. "The existence of economic duress is demonstrated by proof that one party to a contract has threatened to breach the agreement by withholding performance unless the other party agrees to some further demand." *805 Third Avenue Co. v. M.W. Realty Assoc.,* 58 N.Y.2d 447, 453, 461 N.Y.S.2d 778, 448 N.E.2d 445 (1983). *See also Bank Leumi Trust Co. of New York v. D'Evori Int'l, Inc.,* 163 A.D.2d 26, 30, 558 N.Y.S.2d 909, 914 (1st Dept.1990). "Actions, not motives, must cause economic duress." Economic duress requires a "showing of a wrongful threat which precluded the plaintiff's exercise of free will...." *Grubel v. Union Mutual Life Ins. Co.,* 54 A.D.2d 686, 387 N.Y.S.2d 442, 443 (2d Dept.1976). Plaintiffs do not suggest that Bankers Trust imposed any unlawful conditions or demands upon Mr. Reagan. Nor have plaintiffs pointed to evidence which would establish that on or before March 22, 1991, Bankers Trust owed plaintiffs an unconditional duty to fund the loan for $22.5 million, $33 million, or any amount.[5] Instead, plaintiff's counsel points to the impending March 31 option deadline and the parties' unequal bargaining position as of March 22. By then, Mr. Reagan no longer had time to seek alternative financing; if the March 31 option deadline was to be met, the funds necessary would have to come from Bankers Trust. The economic pressure upon Mr. Reagan in the last ten days of March 1991 originated from the option agreement with the Revere defendants—the source of the March 31 deadline—and not from actions of Bankers Trust, whose loan

commitment did not expire under its own terms until April 23.

Proof of the increasingly strained financial picture facing Mr. Reagan as March 1991 drew to a close does not establish economic duress wrongfully impressed upon him by Bankers Trust. "The pressure must be wrongful, and not all pressure is wrongful." 25 Am.Jur.2d *Duress and Undue Influence* § 7, at 363 (1966) (footnote omitted). Under New York law, "the existence of financial pressure and an unequal bargaining position are insufficient to constitute economic duress," particularly where "this pressure was exerted by a third party...." *Edison Stone Corp. v. 42nd Street Development Corp.,* 145 A.D.2d 249, 257, 538 N.Y.S.2d 249, 253 (1st Dist.1989).

Undoubtedly, Mr. Reagan was feeling considerable pressure as the March 31 deadline on the option on the Texas properties approached and he had not obtained the loan proceeds needed to exercise that option. Yet Mr. Reagan refused to sign the Supplemental Commitment Letter when economic pressures were at their peak, between March 22 and March 29, the latter being the date upon which the parties assembled for purposes of closing the loan—all prior to the time that the Revere option expired. *See* Tr. 12/30/93, at 54:2–63:15.

After the Bankers loan did not close on March 29, after the option to purchase the Texas properties had expired on March 31, after the Revere parties had drawn down the million-dollar deposit, after Mr. Reagan and his counsel made the strategic decision to pursue legal action against the Revere parties—*only then* did Mr. Reagan sign the Supplemental Commitment Letter. He executed the document not once, but *three* times—on April 4, April 5 and again on April 14. *See* Tr. 12/30/93, at 6:10–18. He now professes that he did so for reasons apart from any attempt to close the loan. Mr. Reagan's counsel represents that the docu-

---

5. New York courts acknowledge that "a party cannot be guilty of economic duress for refusing to do that which it is not legally required to do." *805 Third Avenue Co. v. M.W. Realty Assoc.,* 58 N.Y.2d 447, 453, 461 N.Y.S.2d 778, 448 N.E.2d 445 (1983). It appears that plaintiffs' theory of this case depends upon the January 16, 1991 Commitment Letter operating as a legal requirement that Bankers Trust fund at least its own designated portion of the $33 million loan syndication package.

ment was signed in an attempt to procure Bankers Trust Company's cooperation in executing affidavits in connection with Mr. Reagan's prosecution of this lawsuit against the Revere defendants. *See* Tr. 12/30/93, at 14:23–15:8, 72:13–73:7. Whatever his immediate motive, however, Mr. Reagan executed the Supplemental Commitment Letter containing the pertinent release language, and did so repeatedly.

Mr. Reagan's financial distress resulting from the failure of the loan negotiations and the expiration of the option on the Texas properties was likely quite severe. Nevertheless, at every stage of the Bankers Trust negotiations, it is apparent that Mr. Reagan acted upon his own volition and with the assistance of his own counsel.[6] His retrospective claims of economic duress are tardy at best. *See Bank Leumi Trust Co. of New York v. D'Evori Int'l, Inc.*, 163 A.D.2d at 30, 558 N.Y.S.2d at 914 ("A party 'who would repudiate a contract procured by duress, must act promptly, or he will be deemed to have elected to affirm it.'" (quoting *Bethlehem Steel Corp. v. Solow*, 63 A.D.2d 611, 612, 405 N.Y.S.2d 80, 82 (1978)).

Under these circumstances, plaintiffs' allegations of economic duress do not state a claim upon which relief may be granted, and upon the present record, plaintiffs' averments do not raise a triable issue of fact.

Mr. Reagan's counsel also argues that Reagan was defrauded of the opportunity to go forward with the transaction as outlined in the January 16 Commitment Letter; the fraud consists of Bankers Trust's alleged failure to disclose its determination, purportedly made sometime in February, not to go forward with the loan transaction in its original $33 million amount, and its representation to Mr. Reagan that if additional conditions were met, that Bankers Trust would fund the loan at the reduced $22.5 million figure, when in fact Bankers Trust did not intend to do so. Tr. at 24:4–25, 28:7–23, 35:20–38:11, 40:4–18, 42:18–43:1. Under New York law, "Bare

allegations of fraud are insufficient to state a cause of action.... To plead such a cause of action, a party must allege representation of a material existing fact, falsity, scienter, deception and injury...." *Edison Stone Corp. v. 42nd Street Development Corp.*, 145 A.D.2d at 257, 538 N.Y.S.2d at 253–54 (citations omitted). Where fraud is alleged, "'the circumstances constituting the wrong shall be stated in detail.'" *Id.* (quoting New York C.P.L.R. 3016(b)). Where a claim is based upon "fraud by concealment ... an essential element of any such claim is a duty to reveal...." *Id.* (citation omitted); *accord, First Security Bank of Utah v. Banberry Dev. Corp.*, 786 P.2d 1326, 1328–29 (Utah 1990) ("Thus, in order to be held liable for fraudulent nondisclosure, there must have been a duty to disclose, the burden of establishing which is on the party alleging the fraud and the determination of which is a question of law for the court to decide." [footnotes omitted]).

■ No one suggests that a confidential or fiduciary relationship existed between plaintiffs and Bankers Trust in February and March 1991, or that Bankers Trust had a statutory duty to disclose information obtained in the course of its due diligence, or its evaluation of that information. Nor do any special circumstances in this case give rise to a duty of disclosure of such information on the part of Bankers Trust. *See Edison Stone*, 145 A.D.2d at 257–58, 538 N.Y.S.2d at 253–54; *Banberry*, at 1329–36. Absent such a duty, plaintiffs' claims of fraud based upon non-disclosure fail as a matter of law.

Plaintiffs allege misrepresentations by Bankers Trust in the meetings with Mr. Reagan and his counsel on March 21 and 22:

MR. CAMPBELL: ...

Our position is, Judge, that this meeting and this orchestration of facts on March 21 and 22 was a fraud. This bank didn't have any intention of doing a deal with Reagan at all, and they were going to run one barrel after [an]other after another in

---

6. *Cf. Fehlhaber Corp. v. State of New York*, 65 A.D.2d 119, 127, 410 N.Y.S.2d 920, 925 (3d Dept.1978) ("The record established that the terms of the final Agreement were the result of protracted negotiations. The claimant made a

choice. The fact that claimant '... may have been financially constrained to accept less than the true value of ... (its) alleged damages does not constitute economic duress....'").

front of him. And if he agreed to these eight conditions, they were going to have four more. . . .

Tr. at 42:18–23. While under some circumstances, an affirmative representation concerning one's present intention to perform a future act may be actionable, at least under Utah law,[7] plaintiffs have not pointed out specific evidentiary facts detailing the circumstances constituting the fraud, either from the standpoint of proving falsity or scienter on the part of Bankers Trust, or deception and injury on the part of plaintiffs. At the Final Pretrial Conference, plaintiffs' counsel argued an inference from "the circumstantial evidence . . . [that] they were not going to fund this loan, and they were going to insist on conditions that made it impossible for my client—that were beyond his control." Tr. 12/30/93, at 72:9–12. Yet at the times that Mr. Reagan executed the Supplemental Commitment Letter in April, it was by then apparent to all that the proposed loan had *not* closed on March 29. Nor do plaintiffs point to any efforts on their part after the March 31 deadline had expired to satisfy the terms of the Supplemental Commitment Letter and proceed with the loan transaction. Instead, Mr. Reagan chose to sue the Revere defendants. Mr. Reagan's counsel now suggests that Mr. Reagan signed the Supplemental Commitment Letter in the pursuit of litigation against those defendants, not in reliance upon Banker's Trust's always-conditional expressions of willingness to make the loan.

Plaintiffs' fraud allegations simply do not meet the standard articulated in cases such as *Edison Stone,* and do not present a triable issue. *Cf. Brown–Marx Assocs. Ltd. v. Emigrant Sav. Bank,* 703 F.2d at 1370–71 (directed verdict was proper where "[t]here was evidence that the bank because of changes in the prevailing interest rates no longer considered the loan desirable, but there was no substantial evidence that the bank did not intend to honor the commitment if its terms were met." [footnote omitted]).

Plaintiffs do not argue that Bankers Trust somehow breached the terms agreed upon by Mr. Reagan and representatives of Bankers Trust on March 22, 1991, by failing to make the loan. Rather, plaintiffs repudiate those terms and now seek damages for breach of contract under the January 16, 1991 Commitment Letter. *See* Tr. 12/30/93, at 71:7–16. Yet the conclusion appears inescapable that Mr. Reagan extinguished plaintiffs' claims arising out of the January 16, 1991 Commitment Letter, as well as claims arising out of Bankers Trust's subsequent insistence on differing and additional terms. He did so by thrice executing the Supplemental Commitment Letter, which expressly releases all such claims. Plaintiffs raise no triable issue concerning any legal basis for excusing them from that release.

Pursuant to Federal Rule of Civil Procedure 16(c), at any Pretrial Conference,

consideration may be given, and the court may take appropriate action, with respect to

(1) the formulation and simplification of the issues, including the elimination of frivolous claims and defenses;

(2) the necessity or desirability of amendments to the pleadings;

. . . . .

(5) the appropriateness and timing of summary adjudication under Rule 56; [and]

. . . . .

(11) the disposition of pending motions;

. . . . .

As the Notes of the Advisory Committee on Rules concerning the December 1, 1993 amendments explain, Paragraph (5) of Rule 16(c) was added

in recognition that use of Rule 56 to avoid or reduce the scope of trial is a topic that can and often should, be considered at a pretrial conference. Renumbered paragraph (11) enables the court to rule on pending motions for summary adjudication

7. *See, e.g., Von Hake v. Thomas,* 705 P.2d 766 (Utah 1985); *Berkeley Bank for Cooperatives v.*

*Meibos,* 607 P.2d 798 (Utah 1980).

that are ripe for decision at the time of the conference. . . .

Fed.R.Civ.P. 16 advisory committee's note.

This Court determined that this case presented an appropriate context for the exercise of the power to consider matters and enter orders pursuant to Rule 16(c). At the conclusion of the December 30, 1993 conference, the Court granted Bankers Trust's motion for summary judgment and directed that plaintiffs' claims against Bankers Trust be dismissed. Tr. 12/30/93, at 76:16–79:3.

Analyzed in terms of Rule 56, plaintiffs as the non-moving parties have failed to point to significant probative admissible evidence in the present record showing the existence of a genuine issue of material fact, i.e., evidence "such that a reasonable jury could return a verdict for the non-moving party," (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)), with respect to plaintiffs' claims based on breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, or duress. Plaintiffs have not raised a genuine issue of material fact as to any issue affecting the enforceability of the release set forth in the Supplemental Commitment Letter signed by Mr. Reagan and have thereby waived their claims arising out of the January 16, 1991 Commitment Letter and its subsequent modification.[8]

▌ Recognizing that plaintiffs' fraud and good faith claims, (though discussed in the proposed Pretrial Order executed by counsel), are formally set forth in the *proposed* Third Amended Complaint, the Court denied leave to file that amended pleading. "A court may refuse to allow leave to amend pleadings when the proposed changes would be futile." *New Beckley Min. Corp. v. International Union, United Mine Workers of America*, 18 F.3d 1161 (4th Cir.1994) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962)). Phrased in

terms of this standard under Federal Rule of Civil Procedure 15(a), granting leave to file the Third Amended Complaint would be futile because the added claims are legally insufficient. "[A]n amendment may be futile when it fails to state a valid theory of liability, *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061 (7th Cir.1979), or could not withstand a motion to dismiss. *Glick v. Koenig*, 766 F.2d 265 (7th Cir.1985)." *Bower v. Jones*, 978 F.2d 1004, 1008 (7th Cir.1992). Amendments alleging claims which are vulnerable to affirmative defenses may also be denied as futile. *See Moore v. Baker*, 989 F.2d 1129 (11th Cir.1993) (denial of leave to amend pleading would be justified if newly asserted claim was barred by applicable statute of limitations so that allowing amendment would be futile).

Passing reference was made at the December 30, 1993 Final Pretrial Conference to Bankers Trust's Counterclaim, which seeks to recover expenses incurred during the course of the 1991 loan negotiations and since, including substantial attorney's fees. No Rule 56 motion was pending at that time with respect to the Counterclaim and the Court deferred consideration of the matter until January 6, 1994, affording counsel an opportunity to confer with Bankers Trust about the continued prosecution of its claim. On January 4, 1994, plaintiffs filed a Rule 56 motion attacking the counterclaim.

At the continued Pretrial Conference on January 6, 1994, the Court engaged in a colloquy with counsel concerning the Counterclaim. The January 16, 1991 Commitment Letter and an accompanying "Fee Letter" executed the same date which obligate plaintiffs to pay fees and expenses incurred during the course of the negotiation of the transaction and to indemnify Bankers Trust for any loss or damages incurred in the transaction. *See* Exhibit "B" to Memorandum in support of ROA General, Inc.'s Motion for Summary Judgment as to Bankers Trust's

---

**8.** For these reasons the Court need not reach the plaintiffs' allegations that Bankers trust breached the Commitment Letter itself, or the assertion that Mr. Reagan is bound by certain adverse admissions referred to by Bankers Trust in its memoranda. Contrary to plaintiffs' subsequent objection, the Court's ruling encompasses the

merits of all of plaintiff's theories as to the validity of the Supplemental Commitment Letter, including fraud. *See* Reagan's Response to Bankers' January 21, 1994 Objection to Reagan's Proposed Form of Order Granting Summary Judgment, dated February 2, 1994, at 2 & nn. 2–3.

Counterclaim for Attorney's Fees and Indemnification, dated January 4, 1994. Transcript of Hearing on Bankers Trust Counterclaim [Final Pretrial Conference], dated January 6, 1994 ("Tr. 1/6/94") at 4:15–20, 5:8–17. Pointing to those provisions, Bankers Trust argues that plaintiff remains liable for those fees and expenses notwithstanding the execution of the Supplemental Commitment Letter or Bankers Trust's ultimate refusal to fund the loan.

■ Plaintiffs point to language in the Supplemental Commitment Letter which revisits the question of fees and expenses:

> Given the current state of affairs, we believe that the definitive loan documentation contemplated by the Proposed Financing Letter must at least contain the following key provisions:
> (i) Provisions for the payment of legal fees and other costs of the transactions from sources and on terms mutually satisfactory to Bankers Trust and you.

Supplemental Commitment Letter at 3. Plaintiffs contend that this language is inconsistent with and therefore supersedes the fee provisions of the January 16 letters; no further agreement having been reached between these parties on this subject, plaintiffs argue that they are not liable to Bankers Trust for fees or expenses incurred in the loan transaction negotiations, or subsequently. Bankers Trust responds that "The purpose of that provision was directed toward where the funds would come from, not whether they would be paid." Tr. 1/6/94, at 6:24–7:1.

Counsel for Bankers Trust acknowledges that by the time the Supplemental Commitment Letter was drafted, the fees had already exceeded the budgeted amount agreed upon as part of the original loan package, to be paid by plaintiffs as provided in the January 16 letters. Tr. 1/6/94 at 6:21–24, 7:8–10. The language quoted from the Supplemental Commitment Letter is not limited by its terms to only those fees and expenses exceeding the original budget. It addresses the "legal fees and other costs of the transactions," without limitation. Nor can the unambiguous language of the Supplemental Commitment Letter be limited by construc-

tion to address only the question of "where the funds would come from;" it expressly refers to payment of legal fees and transaction costs "from sources *and on terms mutually satisfactory*" to plaintiffs and Bankers Trust. (Emphasis added.)

The Supplemental Commitment Letter recasts the material terms of the proposed loan transaction. It reopens the subject of payment of fees and expenses, expressing a new "agreement to agree"—including the mutual intent that the new agreement as to sources and terms of payment be reduced to writing in "the definitive loan documentation." Under New York law,

> It is well settled that "if the parties to an agreement do not intend it to be binding upon them until it is reduced to writing and signed by both of them, they are not bound and may not be held liable until it has been written out and signed" (*Scheck v. Francis*, 26 N.Y.2d 466, 469–470, 311 N.Y.S.2d 841, 260 N.E.2d 493). The written exchanges between the parties clearly establish that the agreement was to take effect only after it had been reduced to a formal written document signed by both parties. "Without any intent to be bound by prewritten contract negotiations there is no mutual assent, and without mutual assent there is no contract as a matter of law" (*Tebbutt v. Niagara Mohawk Power Corp.*, 124 A.D.2d 266, 268, 508 N.Y.S.2d 69).

*EDP Medical Computer Systems, Inc. v. Sears, Roebuck and Co.*, 149 A.D.2d 563, 564–65, 540 N.Y.S.2d 18, 19–20 (2d Dept. 1989). *See also Gupta v. University of Rochester*, 57 A.D.2d 731, 731, 395 N.Y.S.2d 566, 567 (4th Dept.1977) ("It is well settled that in order to form a binding contract there must be mutual assent to the terms and conditions thereof...." (citations omitted)).

Counsel represents that the evidence would show that no substantive agreement concerning the sources and material terms of payment of fees and expenses was reached between plaintiffs and Bankers Trust, and that no "definitive loan documentation" was executed reflecting any such agreement. Tr. 1/6/94, at 15:1–5, 15:18–24. The lack of a

definitive writing, in light of the rule articulated in *EDP Medical Computer Systems,* would itself seem sufficient to defeat Bankers Trust's Counterclaim.

■ If, as Bankers Trust suggests, the Supplemental Commitment Letter is a binding contractual agreement,[9] it abrogates the existing terms concerning payment of fees and expenses and expressly reserves the matter for future negotiation. The Court cannot inject material terms into a contract where the parties have not agreed to terms, but instead have merely "agreed to agree" on material terms at some point in the future. Under New York law, "[i]n the absence of definiteness or certainty as to material matters," a party's alleged promise is "nothing more than an unenforceable agreement to agree (see, *Matter of 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.,* 78 N.Y.2d 88, 90–91, 571 N.Y.S.2d 686, 575 N.E.2d 104; *Martin Delicatessen v. Schumacher,* 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541)." *Bower v. Atlis Systems, Inc.,* 182 A.D.2d 951, 952–53, 582 N.Y.S.2d 542, 543 (3d Dept.), *appeal denied,* 80 N.Y.2d 758, 602 N.E.2d 1125, 589 N.Y.S.2d 309 (N.Y. 1992); *see Seiden v. Francis,* 184 A.D.2d 904, 905, 585 N.Y.S.2d 562, 563 (3d Dept.1992) ("It is well settled that 'a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable' (*Martin Delicatessen v. Schumacher,* 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541).") Interpretation of the pertinent language of the Supplemental Commitment Letter being a question of law, the Court ruled at the Final Pretrial Conference, and now reaffirms its ruling, that Bankers Trust's Counterclaim should be dismissed.

Finally, plaintiffs filed a Motion to Reconsider Summary Judgment as to the Validity of Supplemental Commitment Letter, also dated January 4, 1994, asserting that the Court's December 30, 1993 ruling concerning the enforceability of the Supplemental Commitment Letter should be vacated in light of plaintiffs' contention that the agreement lacks consideration. *See* Memorandum in Support of Plaintiffs' Motion to Reconsider Summary Judgment as to the Validity of Supplemental Commitment Letter, dated January 4, 1994, at 3–4 (citing *Baggs v. Anderson,* 528 P.2d 141, 143 (Utah 1974)). Plaintiffs also argued that Mr. Reagan executed the Supplemental Commitment Letter with the understanding that his signing was conditioned upon the funding of the loan. *Id.* at 4–5.

■ Bankers Trust's objections to plaintiffs' "consideration" theory aside (*see* Proposed Pretrial Order at 33 ¶ 10, 34), plaintiffs' motion for reconsideration fails for at least two reasons: (1) plaintiffs' motion does not set forth proper grounds for reconsideration, *see, e.g., Zimmerman v. Sloss Equipment Inc.,* 835 F.Supp. 1283, 1289 (D.Kan. 1993)[10]; and (2) it fails as a matter of law. "Virtually anything that anyone would bargain for in exchange for a promise can be consideration for that promise." E. ALLAN FARNSWORTH, CONTRACTS § 2.3, at 45 (2d ed. 1990). Having prevailed upon the theory that Bankers Trust surrendered its then-existing claims for attorney's fees and transaction costs under the January 16 letter in favor of the mere "agreement to agree" set forth in the Supplemental Commitment Letter, plaintiffs are hard pressed to now suggest that Bankers Trust incurred no bargained-for detriment that could suffice as consideration for the Supplemental Commitment Letter as a contract. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 17, 71 (1981); BLACK'S LAW DICTIONARY 306 (6th ed. 1990) ("consideration" means, *inter alia,* "some forbearance, detriment, loss, or responsibility, given, suffered, or undertaken by the other"). Here again "[i]t is hard to

---

9. "What is sauce for the goose is also sauce for the gander." *Williams Natural Gas Co. v. City of Oklahoma City,* 890 F.2d 255, 265 (10th Cir. 1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990).

10. [C]ourts in general have recognized three major grounds justifying reconsideration: (1) an intervening change in controlling law; (2) availability of new evidence; and (3) the need to correct clear error or prevent manifest injustice. *Estate of Pidcock v. Sunnyland America, Inc.,* 726 F.Supp. 1322, 1333 (S.D.Ga. 1989); *see Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).
835 F.Supp. at 1289.

ignore the pertinency of the ancient aphorism of the sauce for the goose and gander." *Application of Cohalan,* 71 Misc.2d 196, 198, 335 N.Y.S.2d 747, 750 (Sup.Ct.1972).

Further, Mr. Reagan's subjective understanding as to the "conditional" nature of his signature finds no expression in the terms of the Supplemental Commitment Letter. *Cf.* ARTHUR R. CORBIN, CORBIN ON CONTRACTS § 151, at 674 (1951) ("Whether something is a condition of a promisor's duty depends on *whether he has expressed an intention* that it shall be so...." (emphasis added)). As noted above, Mr. Reagan signed the document on no less than three occasions *after* he knew the loan had not closed on March 29. The language of the release is unconditional. Implication of an "express condition" [11] nullifying those terms after the fact would be wholly inconsistent with the Supplemental Commitment Letter's express terms. *See, e.g., City of Yonkers v. Otis Elevator Co.,* 844 F.2d 42, 46 (2d Cir.1988) (" 'the court will generally not imply a term in the face of the parties' expressed intent to the contrary' ").

For all of these reasons, plaintiffs' motion for reconsideration shall be denied.

By letter dated January 18, 1994, counsel for plaintiffs raised the question of the award of costs pursuant to Federal Rule of Civil Procedure 54(d). Bankers Trust responded to plaintiffs' position in its Objection to Reagan's Proposed Form of Order Granting Summary Judgment, dated January 21, 1994.

As another district court in this circuit observed in *Martin v. Frontier Federal Savings and Loan Association,* 510 F.Supp. 1062 (W.D.Okla.1981):

The award of costs is subject to the discretion of the Court where reasons exist for denial. *True Temper Corp. v. CF & I Steel Corp.,* 601 F.2d 495, 509 (10th Cir. 1979). The mere fact that a party has litigated in good faith is not sufficient reason to absolve a party from imposition of costs, *Popeil Bros., Inc. v. Shick Electric, Inc.,* 516 F.2d 772, 776 (7th Cir.1975), however, several courts have declined to award

costs when good faith is present and the prevailing defendant has significantly larger financial resources than an individual plaintiff. See, e.g., *Schaulis v. CTB/ McGraw–Hill, Inc.,* 496 F.Supp. 666, 679–80 (N.D.Cal.1980); *County of Suffolk v. Secretary of the Interior,* 76 F.R.D. 469 (E.D.N.Y.1977); *Maldonado v. Parasole,* 66 F.R.D. 388, 390 (S.D.N.Y.1975)....

510 F.Supp. at 1069. *See also Braxton v. United Parcel Service, Inc.,* 148 F.R.D. 527 (E.D.Pa.1993). Having reviewed the matter and being fully advised in the premises, the Court in the exercise of its discretion under Rule 54(d) determines that for reasons of significant economic disparity between these parties, each party should bear its own costs of action.

Good cause thus appearing therefore,

IT IS ORDERED that defendant Bankers Trust Company's Motion for Summary Judgment is GRANTED with respect to each of plaintiffs' claims and that plaintiffs' Second Amended Complaint is DISMISSED;

IT IS FURTHER ORDERED that plaintiffs' motion for leave to file the Third Amended Complaint is DENIED as futile;

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment is GRANTED and that Bankers Trust Company's Counterclaim is DISMISSED;

IT IS FURTHER ORDERED that plaintiffs' Motion to Reconsider Summary Judgment as to the Validity of Supplemental Commitment Letter is DENIED;

IT IS FURTHER ORDERED that the consolidated cases, *Bankers Trust Company vs. Reagan National Advertising of Austin, Texas,* Civil No. 92–C–423 (D.Utah filed May 13, 1992), and *William K. Reagan and R.O.A. General, Inc. vs. Bankers Trust Company, et al.,* Civil No. 92–C–103 (D.Utah filed Feb. 3, 1992), and all claims and counterclaims pleaded therein, shall be DISMISSED; and

IT IS FURTHER ORDERED that each party shall bear its own costs of action.

---

**11.** Treatment of the making of a loan as a condition *precedent* to the making of a binding loan commitment letter seems problematic at best.

*Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 230 (1981).

LET JUDGMENT BE ENTERED AC-
CORDINGLY.